PROVOSTY, J.
On September 14, 1915, Mrs. Brana charged her husband before the juvenile court with having failed to provide for the support of their nine months old child; and the court made an order that he pay her $3 weekly for that purpose.
*308 On the same day, the husband brought suit in separation from bed and board in the civil district court, and the suit was assigned to the division of the respondent judge.
Two days thereafter, on the 16th, the probation officer of the juvenile court, made an affidavit before that court, charging that the husband had taken the child from the custody of the mother; that the child was sick; that the mother had made every effort in vain to see the child in order that she might attend to its wants; and that the child was a neglected child; and the said court made an order “temporarily placing the child in charge of her mother until further orders of this court.”
Whether this was done after, or without, having granted the father a hearing does not appear.
On the next day, the 17th, the husband took a rule in the respondent judge’s court, as an incident in the separation from' bed and board suit, on his wife to show cause why the custody of the child should not be given to him, for the reason that the mother was an unfit person.
On the day fixed for the return of this rule, September 21, 1915, the parties were heard, and the court made an order, giving the custody to the mother, but requiring her to furnish bond in the sum of $300 conditioned for the production of the child in court whenever so ordered.
On February 15, 1916, the husband took another rule on his wife in the respondent judge’s court to show cause why the order of September 21st, giving her the custody of the child, should not be set aside and the custody taken away from her and given to him. He assigned as reasons that the wife had not given bond, as required, and had—
“moved from her former residence without permission of the court, under the advice and instigation of certain intermeddlers, so as to make it as inconvenient as possible for mover to call for and ask for the child, at the same time isolating said child from all family surroundings” ; and because “said defendant works out at the Victoria Hotel daily from 7 a. m. to 2 p. m. and from 5 p. m. to 8 p._m., and during all of that time abandons this child to the care and mercy of strangers, and thus deprives said child of both maternal and paternal love and affection.”
In her return to this rule, the wife alleged that her change of residence had been by authority of both the juvenile court and the court of the respondent judge; that her custody of the child was by virtue of a judgment of the juvenile court of date September 27, 1915; and that, the two courts having concurrent jurisdiction, and the juvenile court having been first seized of the child, the respondent judge was without authority to proceed further in the matter.
After hearing, the respondent judge held that it was his court that had been first seized of the child by virtue of his order of September 21, 1915, and that, moreover, the juvenile court had no jurisdiction at all over the child, since it was not a neglected child, it was -under the care of the husband’s mother, a woman of means, “in the house in which it was born, where it was raised up to the age of 15 months, and had every comfort a child of that age could have”; that the case was simply one where two parents were contending for the custody of a child to whom they were attached, and of whom they would be sure to take good care. And he revoked the order by which he had given the custody to the mother, and gave the custody to the father.
Thereupon the wife applied to this court for the writs of certiorari and prohibition to review this action of the respondent judge.
In his return the respondent judge justifies his action on the grounds hereinabove stated, and adds that, on the trial before him:
“It was shown that Mr. Brana, when he married and until his wife abandoned him, lived with his mother, Widow Charles Brana, a lady *310 of means, who was devotedly attached to said minor child, has always cared and provided, not only for said child, but also for the father and mother, the child being raised on the bottle.”
[1] The juvenile court is asserting jurisdiction of said child on the score of its being a neglected child, and not on any other ground. The law which confers jurisdiction upon said court over neglected children prescribes the conditions which must exist in order that a child should be considered to be a neglected child. It provides:
“The term ‘neglected child’ shall mean any child, seventeen years of age and under, found destitute or dependent on the public for support or without proper guardianship, or whose home, by reason of the neglect, cruelty or depravity, or indigence, of its parents, guardians or other persons, is an unfit place for such child, or having a single surviving parent undergoing punishment for crime, or found wandering about the streets, at night, without being on any lawful business.”
In the case of State v. Rose, 125 La. 1080, 52 South. 165, this court held that the juvenile court had no jurisdiction of a child simply because it was made to perform on the stage, and said:
“No children are neglected or delinquent, for the purposes of its jurisdiction, save those who fall within the classification established by the law which confers the jurisdiction.”
In State v. McCloskey, 136 La. 739, 67 South. 813, this court said that the meaning of the term “neglected child,” had been “expressly, carefully, and explicitly defined by the” law conferring jurisdiction upon the juvenile court.
It is plain, therefore, that, upon the assumption of the facts of the case being as stated by the respondent judge, the juvenile court was utterly without jurisdiction in the matter, and its interference was simply that of an intermeddler.
[2, 3] The judgment of any tribunal in a matter of which it has no jurisdiction is a mere nullity, and may be treated as such whenever and wherever it is sought to be made a ground of action or defense. But it is equally true that the decision of any tribunal, upon a question of fact of which it has jurisdiction, is conclusive; that is to say, is not to be challenged on the score of its incorrectness, except in a direct action brought for that purpose, 'or by recourse to some tribunal having power of revision over it. These propositions are axiomatic. The juvenile court is vested with jurisdiction to determine when a child answers the description given of a neglected child by the Constitution; and hence its decision upon that point is not subject to inquiry in the court of the respondent judge, but has to be there assumed to be well founded. For the purpose of the present discussion, therefore, the said child has to be assumed to be a neglected child.
[4] The learned respondent judge concluded that because the fact of this child being a neglected child, is jurisdictional, and because he, himself, found upon the evidence that this fact did not exist, therefore the juvenile court had no jurisdiction, and its judgment, or order, was a pure nullity. This view would be correct if this fact of the condition of the child were a fact strictly jurisdictional, but such is .not the case; it is only quasi jurisdictional. For a very clear exposition of the distinction between matters strictly jurisdictional and matters quasi jurisdictional only, see Noble v. Union River Logging Co., 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123.
[5] Equally untenable is the other ground of the decision of the learned respondent judge — that his court was first seizéd of the child. In the first place, the ‘order made by the juvenile court, on September 16th, placing the child in the custody of the mother, preceded by five days that made by the respondent judge on September 21st, placing the child in the custody of the mother. In *312 the second place, the question cannot be made to depend upon precedence. The two courts have not concurrent jurisdiction. This has already been pointed out in the case of State v. McCloskey, 136 La. 739, 67 South. 813. The one jurisdiction is civil; it acts as between the parents. The other is quasi criminal; it acts as between the state and the parents, or as between the state and the child. After the respondent judge’s court has awarded the child to the one parent, as being the one most worthy, Or least unworthy, of the charge, there is nothing to prevent the juvenile court from finding that the child is being neglected, and therefore should be taken away from both parents, or from the parent who is neglecting it. And such a course would in no wise interfere with the jurisdiction of the court having civil jurisdiction as between the two parents. In such a case, the action of the juvenile court would be based strictly on the ground 6f the child being neglected, and not, like that of the respondent judge, upon an issue between the two parents.
This is the legal, or theoretical, aspect of the matter. We readily perceive that in practice the situation may develop differently. That in a case such as the respondent says in his return this one is, where the child is not a neglected child, there would be a conflict between the two courts. But the law would not be to blame; but the juvenile court would be at fault in having found that a child was neglected when in fact it was not.
In this case this court cannot review the facts on this point, no more than it c'ould in the McCloskey Case, supra; the facts not having been brought in such form as would allow of its being done.
Therefore let the writ of prohibition issue herein as prayed.
O’NIELL, J.-, dissents.