269 So.2d 217

Eileen Reed GRIFFITH

v.

Joseph Folse ROY, Sr.

J. Folse ROY

v.

Eileen REED, wife of Joseph Folse Roy, Jr.

No. 52241.

Nov. 6, 1972.

Rehearings Denied Dec. 11, 1972.

Reed, Reed & Reed, Floyd J. Reed, New Orleans, for plaintiff-applicant.

Sydney J. Parlongue, Philip R. Riegel, Jr., New Orleans, for defendant-respondent.

BARHAM, Justice.

We are required to determine whether a district court or a juvenile court has jurisdiction to adjudicate the status and custody of two children under seven years of age when a neglect complaint is made by a grandparent and there has been no prior judicial determination of custody between the divorced parents.

These very young children are the issue of a marriage between Eileen Reed and Joseph Folse Roy, Jr. The mother instituted a separation suit in July, 1969, in Orleans Parish where she and the children were domiciled, and she was awarded provisional custody. The children remained with their mother until February 5, 1971, when they were taken by their paternal grandfather, Joseph Folse Roy, Sr., from the domicile of the mother in Jefferson Parish. On February 9, 1971, the paternal grandfather filed suit in the *district court* for the Parish of Jefferson alleging that the children were neglected and that their mother was morally unfit to keep them, and praying for the permanent custody of the children. Personal service was had on the mother, but she failed to answer and never appeared in the proceedings. Meanwhile, the father of the children had obtained a default divorce judgment on his petition in Orleans Parish. The judgment was silent as to the children of the marriage. On March 10, 1971, by judgment of default in the Jefferson Parish district court the grandfather was given the permanent custody of the children.

On May 8, 1971, the mother, having remarried, filed a petition for writ of habeas corpus in the district court of Jefferson Parish seeking the custody of her children. The father of the children filed an inter-

vention asking that he be given their custody if they were taken from the grandfather. At the suggestion of the district judge the mother also filed a rule for change of custody in the suit in which the grandfather had obtained custody, and these proceedings were consolidated for trial. The district court dismissed the writ of habeas corpus and awarded the grandfather custody of the children in conformity with its earlier decree. The Court of Appeal affirmed, 256 So.2d 705, and we granted certiorari.

The development of court jurisdiction over juveniles is pertinent to our determination of this case. Act 79 of 1894 created a new function for *district courts* of this state. It charged the judges of those courts, upon presentation by affidavit that parents or parent, tutor or other person having custody of a child endangered the physical or moral welfare of the child by neglect or abuse, to remove the child from that person and provide him with a home or other place for safekeeping for his best interest. *Juvenile courts* in Louisiana had their origin in 1908, when by a constitutional amendment such courts were established and given the power to declare children neglected and to commit them to institutions or to some citizen of good moral character. The Constitution of 1913, Article 118, retained the establishment of juvenile courts, but Act 201 of 1918, amending Article 118, declared that the provisions relating to their jurisdiction and powers *shall not be* exclusive.

The Constitution of 1921, Article 7, Section 52, in its original form and as last amended, provides: "There shall be a Juvenile Court for every parish of the State." The judges of the district courts are made ex officio judges of the juvenile courts for the parishes where separate juvenile courts have not been established, and the juvenile courts are given jurisdiction "* * * of cases of the State of Louisiana in the interest of children under seventeen years of age, as may be provided by the Legislature, brought before said Courts as delinquent or neglected children * * *" and of "* * * all cases of desertion or nonsupport of children * * *".

Under Act 79 of 1894 (former R.S. 9:551–553) the district courts and the juvenile courts had concurrent jurisdiction over the "trial" of neglected children. That act, however, was repealed by Act 111 of 1956, so that after 1956 the district courts of Louisiana were divested of jurisdiction over "neglected" children, and in matters concerning children were left with jurisdiction of only civil proceedings. Conversely, of course, a special juvenile court or a district court in session as a juvenile court could exercise the jurisdiction in matters affecting children specially accorded them by the Constitution and by legislative enactment.

As regards jurisdiction of the district courts in matters of child custody, Code of Civil Procedure Article 10 provides:

"A. A court which is otherwise competent under the laws of this state has jurisdiction of the following actions or proceedings only under the following conditions:

" * * *

"(5) A proceeding to obtain the legal custody of a minor if he is domiciled in, or is in, this state;

" * * *

"(7) An action of divorce, or of separation from bed and board, if one or both of the spouses are domiciled in this state and, except as otherwise provided by law, the grounds therefor were committed or occurred in this state, or while the matrimonial domicile was in this state."

The two basic provisions of the Civil Code which set out the substantive law for custody matters in the district courts are Articles 146 and 157.[1] Their sources are Articles 267 and 302 of the Code Napoleon, respectively. However, our articles depart from their source provisions by deleting the right of the court to place the children with a third party upon petition by the mother, a relative, or the proper government official.[2] Thus it may be seen that in France it was specifically provided that third parties and the government had an interest in a proceeding for the custody of children upon the dissolution of marriage by divorce, and that the care and custody of such children could be placed in a third person. In Louisiana, however, under a literal reading of our Code, during the pendency of litigation for separation from bed and board or divorce

1. Civil Code Article 146 provides: "If there are children of the marriage, whose *provisional keeping* is claimed by both husband and wife, *the suit being yet pending and undecided*, it *shall* be granted to the wife, whether plaintiff or defendant; unless there should be strong reasons to deprive her of it, either in whole or in part, the decision whereof is left to the discretion of the judge." Article 157 provides in part: "In all cases of separation or of divorce the children *shall* be placed under the care *of the party* who shall have obtained the separation or divorce unless the judge shall, for the greater advantage of the children, order that some or all of them *shall* be entrusted to the care of the *other party.* * * *" (Emphasis here and elsewhere supplied.)

2. Code Napoleon Article 267 provided that in a suit for divorce the children should provisionally remain with the husband (who was preferred not only in that Code, but in our Codes of 1808 and 1825 and even in our Code of 1870 until the amendment by Act 124 of 1888 placed the preference in the wife). However, "on petition of the mother, family [which means an individual relative, 1 Pt. 1 Planiol, Treatise on the Civil Law § 1277] or commissaire du Gouvernement" the court might order the children placed elsewhere. Code Napoleon Article 302 gave the custody with the decree of divorce to the party who had obtained it "unless the court, on the petition of the commissaire du Gouvernement", for the greater advantage of the children entrusted them into "the care of the other party *or of a third person*".

or upon judgment of separation or of divorce, the court is empowered, perhaps mandated, to determine the custody of the minor children *as between the parties, the parents.*

Our law specifically recognizes the strong ties and the reciprocal obligations and rights of parents and children. Civil Code Article 227 states this principle very succinctly: "Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children." Following the Roman, the French, and the Spanish, our law recognizes paternal or parental authority and power as the bedrock of the relationship of parents and their children. La.Civ.Code Arts. 215–245. See 1 Domat, Civil Law in Its Natural Order (Strahan's tr. Cushing's ed.), Chapter III, § 3, pp. 13–15; 8 Dupin, Oeuvres de Pothier, Traité des Personnes et des Choses, Tit. VI, Sec. II; 1 Pt. 2 Planiol, Treatise on the Civil Law (La.State Law Inst. tr. 1959), §§ 1636, 1651, 1657, 1701; Las Siete Partidas (Scott's tr. 1931), Part IV, Titles 13, 17, 18, 19. The paternal authority terminates only upon the child's reaching majority or being emancipated (La.Civ.Code Art. 216), upon parental incapacity (La. Civ.Code Art. 221, C.C.P. Arts. 4501–02), upon death (La.Civ.Code Art. 250), upon the modification or cancellation of the marital contract (La.Civ.Code Arts. 146, 157, 250), or upon the deposition of a parent or both parents for neglect or abuse (R.S. 13:1570, 1580).

■ It is necessary to be constantly aware of the distinctions of paternal authority, custody, and tutorship.[3] There is a dissolution of paternal authority in all its aspects upon separation or divorce, just as upon the death of one of the parents. The primary interest on these occasions is to provide the minor children of the marriage with personal care and custody. The need for the immediacy of that determination can be contrasted with the less urgent need for determination of where to vest all of the attributes of paternal authority, where to vest the attributes of tutorship other than those involving the care of the minor's person. Determination of custody and care, especially in the case of the very young, is the decision affecting personal welfare, physical and mental wellbeing, and even life and death.

■ The original custody of a child who has not been adjudicated neglected or delinquent can be determined only in a civil proceeding between parents when both are living, in connection with an attack upon the marital contract or after dissolution of that contract. Since custody and care of children born of the marriage is such a vital part of the marital contract

3. See Appendix.

and since the marital contract is held inviolate from attack by anyone other than the parties to it (husband and wife), no other person can institute a civil proceeding for child custody while that contract exists. To allow such an attack would allow third parties to perhaps induce one of the parties to initiate a legal attack upon the marriage itself. Moreover, it would call upon a court to exercise paternal authority which then exists only in the parents. Until one of the parties attacks the marital contract, the State, through the judicial function, can interfere with that paternal authority only under the special laws defining neglect and delinquency; and then that function is assigned exclusively to the juvenile courts upon petition by the State in the interest of the child and not by petition of a third party in his own interest.

■ Our courts consistently look through the caption, style, and form of pleadings to determine from the substance of the pleadings the nature of the proceeding. See State v. United Bonding Ins. Co. of Indianapolis, Ind., 244 La. 716, 154 So. 2d 374; State v. Shelton, 227 La. 27, 78 So.2d 498; State v. Judges of Fifth Circuit Court of Appeals, 45 La.Ann. 883, 13 So. 2; Erath Sugar Company v. Broussard, 240 La. 949, 125 So.2d 776, and cases there cited. This grandfather's suit here was in fact an attempt to have the mother declared unfit and the children declared neglected. The manner in which the grandfather's suit is styled is of no moment. Here was an attempt by a third party to declare children "neglected" under Constitution Article VII, Section 52. Only the State could exercise that right (although a third party's affidavit may motivate the State to institute such a proceeding, R.S. 13:1574), and then in the juvenile court.[4] A third person cannot by means of the style and form of a petition deprive the juvenile court of its exclusive jurisdiction over neglected children. The district court, lacking jurisdiction, was incompetent to act in the proceedings filed by the grandfather.[5] Therefore the adjudication

4. The Family Court for the Parish of East Baton Rouge has different jurisdictional authority, and cases involving that court should not be analogized on *jurisdictional questions* to those in either the district courts or the juvenile courts. That court has pre-empted the authority that the district court and the juvenile court of that parish had on cases involving juvenile delinquency, criminal acts involving a juvenile, desertion, non-support, and criminal neglect, adoptions, dissolutions of marriage, paternity, alimony and custody proceedings. La.Const. Art. VII, Sec. 53.

For discussion of its jurisdiction see Kelly v. Kelly, 227 La. 275, 79 So.2d 307 (1955); State v. Bannister, 198 So.2d 196 (1st Cir. 1967).

5. In this opinion we are determining only jurisdiction. The question of whether a third party has a right or cause of action to institute a suit which is in substance as well as style a civil proceeding for custody of minor children is not before the court. Neither do we reach the question of a third party's rights in civil custody proceedings pending between parents.

granting custody of the children to the grandfather is null, void, and without effect.

Habeas corpus was unavailable to the grandparent for at the time he initiated his action, he detained the children and had them in his own custody. However, proceeding by writ of habeas corpus can be had here by the mother, where there is a claim of detention by another without legal right. The only jurisdiction for such a proceeding is in the district court,[6] and venue would be where the children are detained or at the domicile of the defendant. The mother's application for habeas corpus relief was brought in the proper forum, and was the legal vehicle by which she could assert her right to regain the custody of the children who had been taken by the grandparent. State v. Renaud, 157 La. 776, 103 So. 101 (1925); State v. Salter, 211 La. 918, 31 So.2d 163 (1947). The district court erred in dismissing that proceeding. It must determine in the hearing on the application for habeas corpus the *custody* of the children and not the *change* of custody of the children since there has never been a legal award of custody.

For the reasons assigned we reverse the judgments below. The judgment on the rule in the proceeding styled J. Folse Roy

v. Eileen Reed, Wife of Joseph Folse Roy, Jr., No. 132–868 on the docket of the Twenty-fourth Judicial District Court for the Parish of Jefferson, is set aside and cancelled, and the proceeding is dismissed. In the proceeding styled Eileen Reed Griffith v. Joseph Folse Roy, Sr., No. 134–967 on the docket of that court, the judgment dismissing the application for writ of habeas corpus is reversed, and the trial court is ordered to proceed in that matter in accordance with this opinion.

## APPENDIX

In repeated writings in the Louisiana Law Review, and more particularly in Tutorship After Separation of the Parents, 16 La.Bar Journal 267, Professor Robert A. Pascal of Louisiana State University has condemned jurisprudence which permits suits for change of custody after an award in a separation or divorce judgment. He states that the parent initially awarded custody under Civil Code Article 157 is by that fact alone constituted *tutor* and can be deprived of *custody* thereafter only through a proceeding to *remove the tutor*. He is of the opinion that when in 1924 Acts 74, 72, and 196 respectively amended Civil Code Articles 157, 246, and 250, tutorship became an essential ingredient of every pronouncement of civil custody. He believes that tutorship is at that moment de

---

6. The Family Court of the Parish of East Baton Rouge has jurisdiction over habeas corpus proceedings, but juvenile courts are not accorded that jurisdiction under our Constitution.

jure vested and complete without the necessity for any other judicial proceeding. He therefore reasons that after the judgment awarding custody in the divorce or separation proceeding, only a civil proceeding *to remove a tutor* can be maintained against the person who obtained custody.

■ While tutorship is inclusive of custody in most instances, a custody award in connection with separation and divorce proceedings does not include *appointment of a tutor, nor does it institute the regime of tutorship.*

Act 74 of 1924 added the following clause to Civil Code Article 157: "The party under whose care a child or children is placed, or to whose care a child or children has been entrusted [in the separation or divorce judgment], *shall of right become natural tutor or tutrix* of said child ·or children to the same extent and with the same effect as if the other party had died." (Emphasis here and elsewhere has been supplied.) By Act 197 of 1924 we amend-·ed Article 221, which had provided and still provides that the father is, during the marriage, administrator of the estate of his minor children, and that his administration ceases at the majority or emancipation of the children. The 1924 amendment added that *the administration* of the minors' estate also *ceases upon judicial separation* of the mother and father. Civil Code Article 159 provides that the effects of divorce are the same as those of separation from bed and board, except that divorce places the parties with respect to each other as though no marriage had been contracted between them. Article 225 *transfers the usufruct* of the child's estate to the party obtaining the judgment in a separation suit, and it necessarily applies to a divorce proceeding which was not preceded by legal separation. Act 72 of 1924 amended Article 246 to read: "The minor not emancipated *is placed under the authority of a tutor after* the dissolution of the marriage of his father and mother or the separation from bed and board of either one of them from the other." Article 247 provides that there are four sorts of tutorships, and Article 248 says: "Tutorship by nature takes place of right, but the natural tutor must qualify for the office as provided by law. In every other kind of tutorship the tutor must be confirmed or *appointed by the court,* and must qualify for the office as provided by law." It should be noted that this language change came through an amendment by Act 30, Section 1, of 1960, and came about in connection with the adoption of the Code of Civil Procedure. That article is in conflict with the articles of the Code of Civil Procedure, and to that extent it must fall, as will be shown later.

■ Article 250 was amended by Act 196 of 1924 to provide that *upon divorce or judicial separation* the *tutorship* of minor children *belongs of right to the parent to whom custody is awarded,* and that this. is

tutorship by nature. The Code of Civil Procedure, adopted in 1960, incorporated many of the provisions concerning tutorship which had previously been a part of our Civil Code. Code of Civil Procedure Article 4031 provides: *"A petition for the appointment* of a tutor of a minor \* \* \* *shall be filed* \* \* \* where the surviving parent is domiciled, \* \* \* or \* \* \* where *the parent* or other person *awarded custody* of the minor is domiciled, *if the parents are divorced or judicially separated."* It is obvious that the natural tutorship does not begin with the judicial pronouncement of custody and without *appointment,* although the right to be tutor is then in existence. See Oppenheim, The Basic Elements of Tutorship in Louisiana, 44 Tul.L.Rev. 452, at 456, 465, 466. Code of Civil Procedure Article 4061 provides the obligations of a natural tutor. Comment (a) under that article correctly states: "Although the surviving parent [or the parent awarded custody] has an absolute right *to be appointed natural tutor,* he must qualify as such before he can exercise the authority conferred on tutors." Article 4131 provides in part that *"The person appointed tutor, except the natural tutor,* shall furnish security \* \* \*". Article 4101 reads in part: *"When any person applies to be appointed as tutor,* the court shall order the taking of an inventory and an appraisal of the minor's property \* \* \*." Article 4131 provides the natural tutor is not required to furnish bond but must record the certificate of inventory required by Article 4101 when one *applies for appointment as tutor,* which operates as a legal mortgage in favor of the minor. Insofar as it is pertinent to the discussion here, it reads: *"Within thirty days after his appointment, the natural tutor* shall cause the clerk's certificate to be recorded in \* \* \* every other parish in the state in which he owns immovable property." Article 4171 requires that every tutor take an oath before he enters upon the performance of his duties, and that the natural tutor include within his oath the list of the parishes in which he owns immovable property. Article 4172 sets forth the requirements to be met before letters of tutorship can issue. The Civil Code provides that every tutor must have an undertutor. Code of Civil Procedure Article 4201 requires that an undertutor be appointed "at the time *judgment is rendered appointing a tutor* \* \* \*". Article 4204 requires the undertutor to "cause the natural tutor to record the legal mortgage \* \* \*". Article 4232 provides that when a tutor fails to qualify within 10 days after his *appointment,* the court may revoke the appointment, but the article says this revocation does not apply to a "parent of the minor [who] is *appointed tutor".* Even under the provisions for "small tutorships" it is anticipated that a natural tutor becomes such only upon judicial appointment. When there is an unemancipated minor and the *parents are di-*

*vorced or judicially separated,* Code of Civil Procedure Article 683 provides that the proper plaintiff to sue, and Article 732 provides that the proper defendant to be sued, is "* * * the tutor *appointed by the court* of this state * * *". When procedural capacity of a divorced or judicially separated parent representing a minor is raised by exception, that parent must cure the defect by seeking the appointment as tutor. C.C.P. Arts. 926(6) and 933; Bogan v. Byrom, 151 So.2d 718 (3rd Cir. 1963); Jackson v. Dickens, 236 So.2d 81 (1st Cir. 1970). When the minor has no tutor to be sued, an attorney at law is provided. C.C.P. Art. 732.

▮ Last and most pertinent for an evaluation of the articles of the Civil Code and the Code of Civil Procedure for determination of when a natural tutorship begins, Sections 5 and 6 of Act 15 of 1960, which adopted the Louisiana Code of Civil Procedure, repealed all laws or parts of laws in conflict or inconsistent with that Code, and provided that in the event of any conflict between the provisions of this Code and those of any other act adopted at the 1960 session, the provisions of the Code of Civil Procedure will control and prevail regardless of the date of enactment at that session. Therefore, while the party awarded custody in a separation or divorce proceeding is of right the natural tutor of the minors, that right is inchoate; it is, as a matter of fact, exactly what Civil Code

Article 250 calls it, "tutorship * * * of right", but no more than a "right". Natural tutorship has existence, as do all other tutorships, only after appointment of the tutor by a judicial tribunal, as provided in the Code of Civil Procedure.

▮ After custody is awarded in a separation or divorce proceeding and if the successful party has not obtained an appointment as natural tutor, the proceeding to be had for change of custody is a civil proceeding *for custody and not for removal of a tutor.*

▮ Grandparents as well as other relations have an interest in causing a tutor to be appointed. See La.Civ.Code Art. 310. In such a proceeding an attack can be mounted upon the qualification of the party or parties preferred for the tutorship even where a parent is preferred as a natural tutor.

McCALEB, C. J., subscribes to the opinion only.

HAMLIN, J., dissents being of the opinion that the judgment of the Court of Appeal is correct.

DIXON, J., dissents with reasons.

DIXON, Justice (dissenting).

I respectfully dissent.

As I understand the majority opinion, it has categorized this grandfather's petition

for custody of his grandchildren as a "neglect" complaint and proceeds to hold that the district court, "lacking jurisdiction, was incompetent to act in the proceedings filed by the grandfather."

This cannot be correct. First, the jurisdiction of the district courts in civil matters is unlimited, and is fixed by the Constitution. Second, plaintiff's petition is not a neglect proceeding. It is an effort to obtain legal custody of grandchildren already in his actual custody.

The district courts in Louisiana are courts of unlimited jurisdiction. Article 7, Section 35 of the Louisiana Constitution of 1921 provides: "The District Courts . . . shall have original jurisdiction in all civil matters . . . and in all cases where . . . civil or political rights are involved, and in all cases where no specific amount is in contest, *except as may be otherwise provided in this Constitution . . .*" (Emphasis added).

Unless another provision of the Constitution limits the jurisdiction of the district courts, possibly by granting *exclusive* jurisdiction to another court, that jurisdiction cannot be restricted by statute.

Article 7, Section 52 of the Louisiana Constitution of 1921 establishes juvenile courts. That article provides that judges of district courts in most of the State are ex-officio juvenile court judges. Certain city courts were given jurisdictions concurrent with the district courts, and as such, the judges of the city courts were ex-officio judges of juvenile courts. There is no indication in the jurisdiction section of Article 7, Section 52 that the jurisdiction granted to juvenile courts was to be exclusive.[1]

R.S. 13:1563 does make the effort to grant exclusive jurisdiction to juvenile courts, as does R.S. 13:1570. Certain exceptions are noted in R.S. 13:1570.[2]

1. "Jurisdiction. The said Courts shall have jurisdiction, except for capital crimes and crimes defined by any law defining attempted aggravated rape if committed by children fifteen years of age or older, of cases of the State of Louisiana in the interest of children under seventeen years of age, as may be provided by the Legislature, brought before said Courts as delinquent or neglected children and of the trial of all persons charged with the violation of any law now in existence or hereafter enacted for the protection of the physical, moral or mental well-being of children under seventeen years of age, not punishable by death or hard labor.

Said Court shall also have jurisdiction of all cases of desertion or nonsupport of children under seventeen years of age, by either parent, or nonsupport of a wife by her husband, and also of the adoption of children under seventeen years of age."

2. "Nothing contained in R.S. 13:1561 through 13:1592 shall deprive other courts of the right to determine the custody of children upon writs of habeas corpus, or to determine the custody of children when such custody is incidental to the determination of cases pending in such other courts."

·It is ·elemental that statutes cannot limit the constitutional grant of jurisdiction given to the district courts.

Finally, this court has reached the rather surprising conclusion that the petition filed by this plaintiff was a proceeding under R.S. 13:1569 et seq. to have a juvenile court declare the grandchildren "neglected" children, apparently contrary to our holding in In re Sherrill, 206 La. 457, 19 So.2d 203. There we held the *juvenile court* to be without jurisdiction in a grandparent's "neglect" petition, when the grandparent alleged that actual custody was in the good home of the grandparents, and the mother's home was unfit.

In this case, plaintiff prayed for a judgment awarding him "the permanent care, custody and control of his two grandchildren . . . " The petition contained over fifty articulated paragraphs, describing conduct of the mother which the petition alleged rendered her morally unfit to keep the children. The petition was filed in the district court. It was heard by the district judge, sitting as a district judge, who rendered written reasons for judgment after consolidating the case with the mother's habeas corpus act. The district court found, based on State v. Stokes, La. App., 222 So.2d 573 and State v. Bannister, La.App., 198 So.2d 196, such unusual circumstances had been presented, showing that the welfare of young children was in jeopardy, that the grandparent could seek the legal custody from the natural parent. The district court granted the legal custody to the grandparent, in whose actual custody the children had been for more than four months.

In one respect, I agree with the majority; this court should pay little attention to the label attached to pleadings. However, I disagree with the majority when it labels this petition a "neglect" action, and because of that label finds that the district court did not have jurisdiction to decide the custody of these children.

"Neglected child" is defined by R.S. 13:1569(8) as follows:

"A 'neglected child' means a child who has been adjudged to be within the conditions set forth in R.S. 13:1570, Subsection 1, paragraphs (1) and (2)."

The relevant portions of R.S. 13:1570 provide that:

"Except as otherwise provided herein, the court shall have exclusive original jurisdiction in proceedings:

"A. Concerning any child whose domicile is within the parish or who is found within the parish:

"(1) Whose parent or other person legally responsible for the care and support of such child neglects or refuses, when able to do so, to provide proper or necessary support, education as required by law, or medical, surgical or other care

necessary for his well-being; or who is abandoned by his parent or other custodian; or who is otherwise without proper care, custody, or support.

"(2) Whose occupation, behavior, environment or associations are injurious to his welfare."

Although the requirements of a "neglect complaint" are not clearly delineated, R.S. 13:1574 sets out the requirements of a petition which shows that a "child is within the purview of R.S. 13:1561 through 13:1592." This phrase encompasses both neglected and delinquent children. R.S. 13:1574 provides:

"Whenever any person informs the court that a child is within the purview of R. S. 13:1561 through 13:1592, the court shall make a preliminary inquiry to determine whether the interests of the public or of the child require that further action be taken. Thereupon the court may make such informal adjustment as is practicable without a petition, or may authorize a petition to be filed by any person. The proceeding shall be entitled 'The State of Louisiana in the interest of ————————, a child under seventeen years of age.'

"The petition shall be verified and, if made by a probation officer or the district attorney, may be upon information and belief. It shall set forth plainly (1) the facts which bring the child in the purview of R.S. 13:1561 through 13:1592; (2) the name, age, and residence of the child; (3) the names and residences of his parents; (4) of the person or persons having custody or care of the child and (5) of the nearest known relative if no parent, custodian or other person having the care of the child can be found. If any of the facts herein required are not known by the petitioner the petitioner shall so state.

"In the trial of a child under R.S. 13:1561 through R.S. 13:1592 it shall be the duty of the district attorney to conduct the prosecution."

The Roy petition varies from the requirements of a "neglect complaint" in that:

(1) The petition is not entitled "The State of Louisiana in the interest of Eileen Kaye Roy and Joseph Folse Roy, III, children under the age of seventeen."

(2) Roy's petition is not verified.

(3) The name of the father is included, but his residence is not included.

(4) The district attorney did not conduct the "prosecution."

A reading of R.S. 13:1561 through 13:1592 indicates that this is not and was not intended to be a "neglect complaint" for the additional reason that the State is not involved in this matter in any way. Apparently, a "neglect complaint" is one to

which the State is either the mover or a party.

In State v. Graham, 173 La. 469, 137 So. 855, this court held that:

" . . . cases involving the neglect or delinquency of children are quasi criminal in their nature, in which cases the state is a party. In cases of neglect, the state acts for and on behalf of the child against either or both parents who may have it in custody, and this creates an issue between the state and the parent, of which issue the juvenile courts have jurisdiction under the express provisions of the Constitution and the statute. Brana v. Brana, 139 La. 305, 71 So. 519."

It should be noted that there is no contest in this case between district courts and juvenile courts for jurisdiction over the persons involved or over the subject matter.

It seems to me that the majority makes it impossible for the district court to adjudicate the question presented to it. We seem to hold that the district court lacks jurisdiction to decide whether the mother is an unfit person: yet we reverse and remand the habeas corpus suit, and order the trial court to proceed in that matter "in accordance with this opinion."

Have we decided that under no circumstances is the grandfather to obtain a decree granting him the legal custody of these children? Are we saying, by inference, that the district court must either grant or deny the mother's demands in the habeas corpus action? Are we saying that the district court could find that the mother, by immoral conduct, had forfeited her right to these children, but the court was without "jurisdiction" to render a judgment granting the grandfather legal custody?

Nor should some of the other broad conclusions in the majority opinion be allowed to rest unchallenged. Such statements in the majority opinion as: "No other person can institute a civil proceeding for child custody while that (marriage) contract exists," are not supported by authority, nor by reason.

We granted writs in this case to consider what the Court of Appeal said and did about the so-called "double burden rule." Such questions, we do not reach. We should, in my view, touch upon this matter. The application by the Court of Appeal of this "rule" was perhaps unfortunate. Nevertheless, an examination of the record demonstrates the probable correctness of the conclusion of the Court of Appeal and the district court that the evidence adduced on the trial of this matter was sufficient to demonstrate the moral unfitness of the mother.

In my opinion, this court should examine the record and determine whether the welfare of these children requires that their grandfather be granted legal custody.