GRISBAUM, Judge,
dissenting with written reasons.
I dissent.
ISSUES
Two principal issues are presented:
(1) Whether the father of a minor, who is physically “separated” from the mother, has the procedural capacity to sue on behalf of that minor, and
(2) Whether the status of legal custody of a minor in need of care (La.R.S. 13:1569) encompasses the right and procedural capacity to sue on behalf of that minor.
ANALYSIS
Prior to addressing the critical principal issues, an examination of prescriptive provisions is appropriate. Actions sounding in tort are subject to the one-year prescription provided in La. C.C. art. 3492, which reads, “Delictual actions are subject to a libera-tive prescription of one year. This prescription commences to run from the day *1267 injury or damage is sustained.” Under arts. 3467 and 3468, moreover, this prescription applies to minors, they being nowhere excepted from it. Article 3467 provides, “Prescription runs against all persons unless exception is established by legislation,” and art. 3468 provides, “Prescription runs against absentees and incompetents, including minors and interdicts, unless exception is established by legislation.” The Comments under art. 3468 make clear that the one-year liberative prescription for torts is among those not suspended during minority.[1]
The petition in paragraph 9 alleges that the minor was burned on or about November 8,1983. Any negligence by the defendants would have preceded this date, for the minor was taken into State custody immediately thereafter. The petition was not filed until August 18,1986. Thus, on the face of the pleadings, tort prescription appears to have run against the minor, absent application of art. 3469 or infringement on due process.
The majority attempt to evade the application of prescriptive principles by finding a suspension thereof “despite the lack of any provision of positive law which expressly authorizes a court to grant a suspension of prescription under the facts described; rather[,]” the opinion states, “our *1268 decision applies to an insufficiency of the law and relies upon principles of reason and equity.” Such a pronouncement entirely ignores that this Court under La. C.C. art. 3467 is bound by the positive law provision that “Prescription runs against all persons unless exception is established by legislation,” (emphasis supplied). Legislation, in turn, is defined by La. C.C. art. 2 as “a solemn expression of legislative will” (emphasis supplied). Given these principles, I consider obvious the conclusion that, notwithstanding our usual prerogative to resort to equity in the absence of specific coverage by positive law, we are in this instance specifically forbidden to concoct prescriptive suspensions.
The only apparent exception should obtain in an instance where a provision, as written, would effect a violation of due process — and in such an instance we apply not equity but a superior positive law: the constitution. The majority, finding no constitutional infringement, err in resorting to equity in derogation of a clear provision of law to the contrary. Moreover, even assuming such a resort were otherwise proper, the majority’s view that there is “an insufficiency of law” on the suspension issue is sheer, unsupported conclusion.
La. C.C. 3469, the application of which the plaintiff asserts in brief, provides, “Prescription is suspended as between: the spouses during marriage, parents and children during minority, tutors and minors during tutorship, and curators and interdicts during interdiction.” The appellant’s argument appears to be that, when the State took custody of the minor, it became his de facto tutor, thus effecting a suspension of tort prescription under art. 3469. The appellant further maintains that when the State took custody of the minor it created a conflict of interest, being both custodian and potential tort obligor at the same time. Since, in such a circumstance, one cannot expect the interest of the child to be safeguarded, a constitutional suspension of prescription should be invoked lest the minor lose his rights by virtue of being afforded no true opportunity to enforce them. This argument, however, falls because of an erroneous underlying assumption: that the father, during the time the State assumed custody, had no right to sue on behalf of his minor child. Like the appellant, the majority are consumed by this assumption.
I first take up whether the father, at the point the State was granted temporary legal custody, was dispossessed of his procedural capacity to sue. At the outset, I find that the physical separation of the father and mother alleged in the plaintiff’s petition is immaterial to a decision here. By virtue of parental authority, under La. C.C. art. 221,
The father is, during the marriage, administrator of the estate of his minor children and the mother in case of his interdiction or absence during said interdiction or absence.
He or she shall be accountable both for the property and revenues of the estates the use of which he or she is not entitled to by law and for the property only of the estate the usufruct of which the law gives him or her.
This administration ceases at the time of the majority or emancipation of the children, and also ceases upon judicial separation from bed and board either of the father from the mother or of the mother from the father.
As administrator of the minor’s estate, the father is the proper party plaintiff to bring suit on behalf of the child. As provided in La. C.C.P. art. 683,
An unemancipated minor does not have the procedural capacity to sue.
Except as otherwise provided in Article 4431, the tutor appointed by a court of this state is the proper plaintiff to sue to enforce a right of an unemancipated minor, when (1) one or both of the parents are dead, (2) the parents are divorced or judicially separated, or (3) the minor is an illegitimate child.
The father, as administrator of the estate of his minor child, is the proper plaintiff to sue to enforce a right of an unemancipated minor who is the legitimate issue of living parents who are not divorced or judicially separated. The *1269 mother, as the administratrix of the estate of her minor child, is the proper plaintiff in such an action, when the father is a mental incompetent or an absentee.
It has been held, moreover, that the father remains the proper party plaintiff even when he has voluntarily absented himself from the family domicile for eight years but nonetheless remains married to the mother of the children. Cosey v. Allen, 316 So.2d 513, 516 (La.App. 1st Cir.1975). Accordingly, the basic right to sue on behalf of the minor remains with the father in spite of physical separation from the mother.
I now turn to analyze whether the father was dispossessed of the right to sue upon the State’s assuming custody of the minor. The majority are of the view that La. C.C. P. art. 683 “does not speak to the situation, as here, where the child has been adjudicated to the state’s custody.” Such an adjudication, however, presents no problem unless it extinguished parental authority to sue, thus impairing the minor’s due process access to a court for redress. Accordingly, my focus here becomes whether legal custody of a minor in need of care encompasses the procedural capacity to sue on behalf of the minor. As defined in La. R.S. 13:1569(11),
“Legal custody” means a legal status created by court order which vests in a custodian the right to have physical custody of the child or minor and to determine, where and with whom he shall live within or without the state, and the right and duty to protect, train, and discipline him and to provide him with food, shelter, education and ordinary medical care, all subject to the powers, rights, and duties and responsibilities of the guardian of the person of the child and subject to any residual parental rights and responsibilities; provided that when the state of Louisiana is the party to whom custody is given, the state may authorize necessary medical treatment and/or emergency major medical treatment, if the attending physician certifies that the medical care is necessary to treat the health problem or it is an emergency medical situation. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by the court.
The right to sue on behalf of the minor is not one of the enumerated incidents of legal custody. Rather, the same provision contemplates that this right will be vested in a guardian, defined as follows:
12. “Guardianship of the person of a minor” means the duty and authority to make important decisions in matters having a permanent effect on the life and development of the minor and to be concerned about his general welfare. It shall include but shall not necessarily be limited in either number or kind to:
a. the authority to consent to marriage, to enlistment in the armed forces of the United States, or to major medical, psychiatric, and surgical treatment, to represent the minor in legal actions, to make other decisions of substantial legal significance concerning the minor;
b. the authority and duty of reasonable visitation, except to the extent that such right of visitation has been limited by court order;
c. the rights and responsibilities of legal custody when guardianship of the person is exercised by the natural or adoptive parent, except where legal custody has been vested in another individual, agency, or institution;
d. the authority to consent to the adoption of the child and to make any other decision concerning him which his parents could make, when the rights of his parents or only living parent, have been judicially terminated as provided in the statutes governing termination of parental rights to facilitate adoption, or when both of his legal parents are deceased.
The structure of subpart (c) implies that legal custody with respect to the State is but one of a bundle of rights composing the overall entity of guardianship. Moreover, as was the case under paragraph 11, under paragraph 12 the right to sue on behalf of the minor does not appear to fall within the domain of the State’s legal custody. Oth *1270 erwise, subpart (a) would have to be qualified in a manner similar to that of subpart (c).
Since legal custody by the State does not, at least generally, include the right to sue on behalf of the minor, the question obviously arises: who, in the absence of an appointed guardian, has this right? La. R.S. 13:1600 defines residual parental rights thus:
(5) “Residual parental rights” are those rights and responsibilities remaining with the parents after the legal transfer of custody of the child, including but not necessarily limited to right of visitation, consent to adoption, the right to determine religious affiliation, responsibility of support, and the right of inheritance from said child. The said child and his lawful descendants are relieved of all of their legal duties and divested of all their legal rights with regard to the parent or other relatives except the right of the inheritance.
This provision no doubt is intended to be read in conjunction with subparts (b) and (c) of the § 1569(12), definition of guardianship and, thus, to define only the parental rights left over when the child has a guardian/tutor. Moreover, under subpart (c)(12), supra, a parent may act as guardian, in which case the two collections of rights and duties no doubt must be fused.
My conclusion, reading all the definitions together, is that legal custody is but part of the overall set of rights and duties attending care of a minor.[2] The elements of legal custody are defined in La. R.S. 13:1569(11) and do not include any general right to sue on behalf of the minor.[3] The right to sue is specifically delegated to the guardian. However, a parent may also be guardian, thereby merging the rights and duties with respect to the child that are not embraced in “legal custody.” When the *1271 parent acts as guardian, clearly he may bring an action on behalf of the minor child notwithstanding that the State is, at the same time, vested with “legal custody” of the child. Such was the case here, Mr. Kozlowski having relinquished the right to sue on behalf of his son by virtue of neither the physical separation from Ms. Koz-lowski nor the State’s assumption of temporary custody.
The majority opinion attempts to extract from the wording of C.J.P. art. 13(11) the proposition that the Department of Health and Human Resources assumes full parental authority over a minor “in the legal and actual custody of the DHHR.” Granted, art. 13 considers an “institution” to be a parent where “no parent has legal or actual custody” of a child; however, this device of procedural utility cannot, by any legitimate stretch of the judicial imagination, be transformed into a means of wresting from the father his parental authority under the guise of a grant of temporary custody. Mr. Kozlowski, purely and simply, was merely physically separated from his son’s mother. No manner of termination of parental authority, other than that embraced in the State’s temporary legal custody, was effected. Under La. R.S. 13:1569(11), legal custody does not bestow on the State the right to sue on behalf of the minor. Rather, under La. R.S. 13:1569(12), this right falls to the child’s guardian — here, the father, who possessed in addition the residual parental rights specified in La. R.S. 13:1600(5), cited by the majority. The majority opinion reaches a fallacious conclusion because it fails to acknowledge that Mr. Kozlowski possessed both the guardianship and residual parental rights components of parental authority, the State having dissociated to itself only the legal custody component. The State’s component, as indicated, does not comprise within its authority any general right to sue on behalf of the minor.
Notwithstanding the majority’s assertion that the father was “obviously incapable of [exercising] this responsibility” — an assertion unsupported by the record, — Mr. Koz-lowski at all pertinent times retained the capacity to sue on behalf of his minor son. However, as to the alleged torts, he failed to exercise this right timely. In an effort to circumvent the father’s failure, the majority treat us to wishful conclusions, grandly cast but sparsely supported. I do not subscribe to the expanded right of the DHHR to sue on behalf of a minor, to the expanded prerogative of a court to fabricate suspensions of prescription, or to the unnecessary observations on tutorship embodied in the majority opinion. I would affirm the judgment of the trial court.
Before CHEHARDY, BOWES, GRISBAUM, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
After the state allegedly was negligent in failing to investigate complaints of child abuse against the mother, a judge placed the child in the temporary legal and physical custody of the state’s Department of Health and Human Resources (DHHR). After custody was returned to the father, Mark Kozlowski, he instituted this action against the DHHR and the St. Charles Parish Sheriff, John Marino,[1] for the child’s damages, which he claimed were caused by the defendants’ negligence in failing to investigate the complaints.
The DHHR and the sheriff’s office each filed a number of exceptions to the plaintiff father’s suit, one of which was an exception of prescription, on the grounds that the minor’s action had prescribed on its face in that it was filed more than one year after the date of the minor’s injuries. LSA-C.C. art. 3492.
In opposition to the exception of prescription, plaintiff relying on LSA-C.C. art. 3469 (“Prescription is suspended as between ... parents and children during minority, ta- *1272 tors and minors during tutorship ... ”), and assuming that a state of tutorship was created once the DHHR took legal custody of the minor, argued that the action was not barred by the one-year period of limitation, because prescription was suspended during the time the DHHR had custody of the child. Plaintiff also argued that when the DHHR took custody of the minor, it created a conflict of interest, being both custodian and potential tort obligor at the same time. Further, since, in such a circumstance, the DHHR could hardly be expected to safeguard the child’s rights by suing itself, a constitutional suspension of prescription should be invoked lest the minor lose his rights by virtue of being afforded no true opportunity to enforce them. LSA-Const. Art. 1, Sec. 22.
After a hearing, the trial court sustained the exception of prescription as to all defendants. Plaintiff appealed to this court. This court reversed the judgment of the trial court and remanded the case for further proceedings in accordance with the views and conclusion expressed within the opinion. The court stated:
... we hold that on the facts of this case a suspension of prescription during the period of said custody is appropriate. We think the values at issue here are analogous to those which permit suspension of prescription between tutors and minors during tutorship and between parents and minors during minority. LSA-C.C. art. 3469. To conclude otherwise would leave the safeguarding of this minor’s rights to his natural parents, who, at least during the period of their minor son’s custody with DHHR, were incapable of this responsibility — thus the assumption of legal and physical custody by DHHR. We realize in so holding, we are formulating a procedure not specifically provided for, but also not expressly prohibited under the Code of Juvenile Procedure or other statutory provisions. In such instances, we would prefer to err on the side of the child than against .... we find untenable the position asserted by defendants, that prescription could run against this minor during the period he is in the legal and physical custody of the defendant DHHR when, allegedly due to the defendants’ negligent failure to investigate the plaintiff’s original complaints of the child’s abuse, the injury which gave rise to the cause of action occurred. To permit prescription to run under the present facts would allow the state to possibly insulate itself against suit for its alleged negligent investigation of reports of child abuse and neglect, by its subsequent custody of the minor, extending beyond the prescriptive period. The minor under these circumstances is doubly helpless to have suit filed on his behalf by virtue both of his age incapacity and also of his doubtless dependency for protection of such rights on the same entity whose alleged negligence has allowed the child to come into its custody so severely injured. Such an outcome is indefensible in view of the purpose of our Louisiana Code of Juvenile law which is to further the welfare of the child.
The panel that reversed the judgment of the trial court was composed of three judges with one judge dissenting. Hence, the case was reargued before a panel of five judges prior to rendition of the opinion. LSA-Const. Art. 5, Sec. 8(B).
The matter now having been heard by a five judge panel, we adhere to the views and conclusion expressed in our original opinion; moreover, on the basis of the 1988 legislative amendment to article 3469, we feel our original position has been solidified.
The statute as amended reads:
Art. 3469. Suspension of prescription
Prescription is suspended as between: the spouses during marriage, parents and children during minority, tutors and minors during tutorship, and curators and interdicts during interdiction, and caretakers and minors during minority.
A caretaker means a person legally obligated to provide or secure adequate care for a child, including a tutor, guardian, or legal custodian.
Acts 1988, no. 676. (eff. date Sept. 9,1988) The stated purpose of the amendment was to provide for the “suspension of prescrip *1273 tion between caretakers and minors during minority.”
Prior to the amendment there was no statutory suspension of prescription as between a minor and caretaker who was not also the minor’s parent or tutor.[2] A minor in that case was often subject to having his rights against a negligent or abusive caretaker prescribe for the lack of a responsible tutor or parent to institute action on his behalf. Such would appear the case with the plaintiff Kozlowski’s minor son absent our analysis and distinction of the particulars of this case.[3]
The Kozlowski minor was severely injured on November 8, 1983, allegedly due to the defendants’ negligent failure to investigate prior abuse reports. Defendant DHHR then assumed legal and physical custody of the child. By the time the child was released from DHHR’s custody on December 30, 1985 and this action instituted, the child’s action against defendants was subject to attack as prescribed. However, if applied retroactively, article 3469, as amended in 1988, would suspend the running of prescription between the DHHR and the plaintiff’s minor son during the period of time the child was in the Department’s custody. Therefore, the present suit filed on August 18, 1986 within a year of the minor’s release from DHHR custody, would be timely.
The issue presented by these facts is, therefore, whether article 3469, as amended by Act 676, is to be here afforded retroactive effect, or whether it should be applied only prospectively.
Louisiana Civil Code article 6 sets forth the general rule on retroactivity of statutes. That article reads as follows:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
The jurisprudence has developed a number of exceptions to the rule of non-retroactive application of statutes. The courts of this state have recognized that statutes dealing with periods of prescription are remedial and are to be applied retroactively unless the legislature has expressed to the contrary or unless to do so would deprive a party of vested constitutional rights. Achord v. City of Baton Rouge, 489 So.2d 1373 (La.App.Cir. 1 1986) writ denied 493 So.2d 641 cert. denied 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762; Lott v. Haley, 370 So.2d 521 (La.1979).
The instant case presents no problem of retroactive application of the amended statute or impairment of constitutionally vested rights, but deals with a minor plaintiff who at one time could state a valid cause of action against the defendants which was barred only by the failure of timely suit. Plaintiff’s rights were never extinguished as in preemption; rather, the legislative suspension of prescription, if applied retroactively, would merely have the effect of removing the bar to plaintiff’s judicial remedy, providing a longer period of time than before to enforce the alleged tortfeasor’s obligations. See, Pounds v. Schori, 377 So.2d 1195, 1198 (La.1979). The rule of retroactive application applies to cases in which prescriptive periods are lengthened as it does where prescriptive periods are reduced. Doyle v. St. Patrick Hospital, 499 So.2d 704 (La.App. 3 Cir.1987) writ denied 503 So.2d 478; Achord v. City of Baton Rouge, supra; Barfield v. Barfield, 483 So.2d 1085 (La.App. 2 Cir.1986). Furthermore, rights arising from the commission of the alleged tort lay with the minor plaintiff, the alleged wrongdoers having incurred obligations only. See, *1274 Brown v. New Amsterdam Casualty Co., 142 So.2d 796 (La.1962). We conclude, therefore, that giving article 3469, as amended by Act 676, retroactive application does not here disturb any constitutionally vested rights.
While holding the amended statute is retroactive, nevertheless we must address the extent of retroactivity to be given it in this case. The change in the law occurred after final judgment in the district court and during the appeal of the case. From our search of the jurisprudence we find the law clear, that this court must decide the appeal applying the law as it now exists and not on the basis of what the law may have been at the time of the trial of the case. It is the duty of the court to adjudge a case before it in accordance with the law existing at the time of its own decision. Dripps v. Dripps, 366 So.2d 544 (La.1979) and cases cited therein; Jackson v. Jackson, 275 So.2d 456 (La.App. 2 Cir.1973); Fullilove v. U.S. Casualty Company of New York, 129 So.2d 816 (La.App. 2 Cir.1961). Accordingly, we conclude that the suspension of prescription as between a minor and its caretaker during minority as specified in amending Act 676 is applicable to the instant matter.
Lastly we address prescription as to St. Charles Parish Sheriff John Marino. In so doing we observe that Sheriff Marino does not fall within the parameters of either former article 3469 or its 1988 amendment. Accordingly, we hold plaintiff's action against Sheriff Marino is prescribed.
For the reasons expressed we reverse the judgment of the trial court which sustained the exception of prescription as to defendant DHHR, affirm as to defendant Sheriff John Marino, and we remand the case to the trial court for further proceedings consistent with this opinion and in accordance with law.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
WICKER, J., concurs.
GRISBAUM, J., dissents in part.

. The Comments under C.C. art. 3468 read as follows (paragraph (b) in both Comments being of especial relevance here):
Comments — 1982 Revision
(a) This provision reproduces the substance of Article 3522 of the Louisiana Civil Code of 1870. It does not change the law. Thus, as a general rule, prescription does not run against minors and interdicts unless exception is established by legislation.
(b) In quite a few instances prescription runs against minors and interdicts. The liber-ative prescription of five years runs against minors and interdicts. R.C.C. (1870) Article 3540. The one and three years liberative prescriptions run against minors and interdicts. R.C.C. (1870) Articles 3534-3539. The thirty years liberative or acquisitive prescription runs against minors and interdicts. R.C.C. (1870) Article 3541. The prescription of non-use of predial servitudes runs against minors and interdicts. C.C. (1977). Finally, the prescription of nonuse of mineral servitudes runs against minors and interdicts. Mineral Code Article 58; R.S. 9:5805. The ten year acquisitive prescription established in Article 3475, this revision, runs against minors and interdicts.
It seems that the only remaining general prescription that is suspended on account of minority or interdiction is the liberative prescription of ten years established in Article 3544 of the Civil Code of 1870. There are, however, additional provisions in the Civil Code and in the Revised Statutes that may be interpreted to suspend prescription as to minors and interdicts by application of Article 3468 of this revision.
Comments — 1983 Amendment
(a) This Article is new. It establishes the principle that prescription runs against absentees and incompetents, including minors and interdicts, unless exception is established by legislation.
(b) Article 3468 of the Louisiana Civil Code, as revised in 1982, followed prior law in de-daring that prescription was suspended in favor of minors and interdicts, unless exception was established by legislation. In reality, exceptions had swallowed that rule. According to former Civil Code Article 3541 (1870), the liberative prescriptions of one, three, five, and thirty years ran against minors and interdicts. Aside from the liberative prescriptions of five years provided by C.C. Art. 3542 (1870) (Art. 3497 in this revision), which were specially suspended in favor of minors alone, only the liberative prescription of ten years was actually suspended in favor of minors and interdicts.
Similarly, special legislation provided that the prescription of nonuse of predial servi-tudes (C.C. Art. 763 (rev. 1977)), and of mineral servitudes, (Mineral Code Article 58, R.S. 9:5805), ran against minors and interdicts, so that only the prescription of nonuse of personal servitudes was actually suspended in favor of minors and interdicts.
Likewise, the acquisitive prescriptions of immovables, ten and thirty years, ran against absentees, minors, and interdicts, (C.C. Arts. 3474 (rev.1982) and 3541 (1870)) so that only the acquisitive prescription of movables, three and ten years, were actually suspended in favor of minors and interdicts.
(c)As a result of this revision, the following prescriptions which did not previously do so now run against minors and interdicts: (1) the ten year liberative prescription; (2) the prescription of nonuse of personal servitudes; and (3) the acquisitive prescriptions of movables, three and ten years. All other prescriptions, also run against minors, interdicts, and absentees unless an exception is established by legislation.
C.C. arts. 31, 78, 362, 365, 366, 373, 382, 389, 401 et seq., 763, 1414, 1919, 1922 to 1924, 2032, 2571, 2595, 2596, 3467, 3473, 3474, 3488, 3489.
LSA-C.C.P. arts. 195, 196, 3993, 4550, 4554. LSA-R.S. 9:151 et seq., 9:732, 9:5631, 9:5642, 9:5801 to 9:5805.

. Griffith v. Roy, 263 La. 712, 269 So.2d 217 (1972) at 221, like the Civil Code, terms the collective bundle of rights "parental authority" and explains its nature as follows:
Our law specifically recognizes the strong ties and the reciprocal obligations and rights of parents and children. Civil Code Article 227 states this principle very succinctly: “Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children." Following the Roman, the French, and the Spanish, our law recognizes paternal or parental authority and power as the bedrock of the relationship of parents and their children. La.Civ.Code Arts. 215-245. See 1 Domat, Civil Law in Its Natural Order (Stra-han's tr. Cushing’s ed.), Chapter III, § 3, pp. 13-15; 8 Dupin, Oeuvres de Pothier, Traité des Personnes et des Choses, Tit. VI, Sec. II; 1 Pt. 2 Planiol, Treatise on the Civil Law (La. State Law Inst. tr. 1959), §§ 1636, 1651, 1657, 1701; Las Siete Partidas (Scott’s tr. 1931), Part IV, Titles 13, 17, 18, 19. The paternal authority terminates only upon the child’s reaching majority or being emancipated (La.Civ.Code Art. 216), upon parental incapacity (La.Civ. Code Art. 221, C.C.P. Arts. 4501-02), upon death (La.Civ.Code Art. 250), upon the modification or cancellation of the marital contract (La.Civ.Code Arts. 146, 157, 250), or upon the deposition of a parent or both parents for neglect or abuse (R.S. 13:1570, 1580).
[2] It is necessary to be constantly aware of the distinctions of paternal authority, custody, and tutorship.3 There is a dissolution of paternal authority in all its aspects upon separation or divorce, just as upon the death of one of the parents. The primary interest on these occasions is to provide the minor children of the marriage with personal care and custody. The need for the immediacy of that determination can be contrasted with the less urgent need for determination of where to vest all of the attributes of paternal authority, where to vest the attributes of tutorship other than those involving the care of the minor’s person. Determination of custody and care, especially in the case of the very young, is the decision affecting personal welfare, physical and mental wellbeing, and even life and death.
[3-5] The original custody of a child who has not been adjudicated neglected or delinquent can be determined only in a civil proceeding between parents when both are living, in connection with an attack upon the marital contract or after dissolution of that contract.
(footnote omitted). Note that this view of custody and care as being a decision "affecting personal welfare, physical and mental wellbe-ing, and even life and death” is consistent with the statutory definitions quoted above and with my interpretation of the probable meaning, once they are read together.

. Those rights and duties not embraced within "legal custody” are defined by both § 1569(12) and § 1600(5), which contain disclaimers that they embody exclusive listings. < Section 1569(11), defining the rights and duties of the State under "legal custody,” in contrast, contains no such disclaimer.

. By plaintiffs First Supplemental and Amending Petition, made additional defendants were: State of Louisiana, as the employer of certain Deputy Sheriffs of St. Charles Parish; Charles Wilson, in his official capacity as Sheriff of St. charles Parish; Johnny Marino, successor in interest to Charles Wilson; and/or any other entity or individual in control and custody of the funds of St. Charles Parish Sheriffs Office, either presently or in the future.

. Former 3469 reads:
Art. 3469. Suspension of prescription Prescription is suspended as between: the spouses during marriage, parents and children during minority, tutors and minors during tutorship, and curators and interdicts during interdiction.

. While we do not hold on the merits of this case, we do note that on the facts alleged, if proved, the possibility of agency negligence sufficient to allow the minor to recover for the agency's failure to follow up on child abuse reports and to remove him from an abusive environment. See for instance, Turner v. District of Columbia, 532 A.2d 662 (D.C.App.1987).