31 So.2d 163

STATE ex rel. SIMPSON et al. v. SALTER et al.

No. 38446.

April 21, 1947.

Rehearing Denied May 26, 1947.

Fraser & Fraser, of Many, for plaintiffs-relators.

J. S. Pickett and J. Reuel Boone, both of Many, for defendants-respondents.

PONDER, Justice.

The relatrix, Mrs. Leola Simpson, is seeking through habeas corpus proceedings to recover custody of her minor child, Sandra Jean Holt.

The relatrix gave birth to the child involved herein on March 1, 1946. She was unmarried at the time and destitute. She became acquainted with the mother of Mrs. Arline Petty Salter, one of the respondents, a short time before the birth of the child while the relatrix was residing in Beaumont, Texas. The mother of Mrs. Salter knew that the respondents, J. S. Salter and his wife, Arline Petty Salter, were anxious to adopt a baby and suggested that they come over to Texas and see the relatrix. The Salters went to Beaumont on or about February 2nd and contacted the relatrix, who agreed to let them have the baby when it was born. They brought the relatrix to Shreveport and placed her in the home of the Volunteers of America. They gave her a small amount of money, some linen and some medicine. There was some correspondence between the Salters and the relatrix concerning the adoption of the baby. Two of the letters from Mrs. Salter to the relatrix form a part of the record. In these letters Mrs. Salter informed the relatrix that she and her husband were having adoption papers drawn up in order that the relatrix might sign them when the baby was born and urged the relatrix to allow them to designate the father as unknown in order to avoid the securing of the signature of the father whose whereabouts were unknown to the relatrix. It was explained in the letters that this was the only way that the Salters could obtain the legal right to the child since the father's signature was unobtainable.

The child was born on March 1st at Charity Hospital in Shreveport. On that date the relatrix signed, at the request of the Salters, a letter purporting to give the baby to the respondents. Three days later the relatrix with the baby was returned to the home of the Volunteers of America. On March 5th, the respondents came to Shreveport for the baby and returned with it to their home in Sabine Parish. The relatrix addressed a letter to the respondents on the 7th or 8th of March requesting them to return the baby and stating that she would not go through with the agreement. On March 12th, the respondents presented to the relatrix at Shreveport an instrument wherein it was recited that relatrix consents to the adoption of the child by the respondents and waives the privileges accorded by law to be made a party to the adoption proceedings. At that time the relatrix, who had not recovered from child birth, called in her uncle, Mr. G. W. Bolton, a merchant of Shreveport, whom she had not previously communicated with, and asked his advice about signing the instrument. Mr. Bolton advised her that it was best to give the baby to the respondents in view of the fact that she had no home and

was not in condition to take care of the baby. Mr. Bolton and the relatrix testified that the relatrix finally consented to sign the instrument, not willingly, but because the relatrix thought Mr. Bolton knew best. It appears from the testimony of the relatrix and Mr. Bolton that the relatrix unwillingly signed the instrument after Mr. Salter had informed the relatrix that he would not release the baby and would carry the matter to court. The instrument purports to be signed in the presence of two witnesses, Mr. Bolton and one Sibley. The signature of the witness Sibley is unexplained. The relatrix, the respondents and Mr. Bolton all testify that they were the only persons present when the instrument was signed. On March 29, 1946, the respondents filed a petition in the Juvenile Court of Sabine Parish seeking to adopt the infant and praying for an interlocutory decree for custody of the child. The Juvenile Court ordered an investigation to be made by the Department of Welfare, but executed no order with reference to the custody of the child. On May 10, 1946, the relatrix filed an opposition to the adoption proceedings. She and her former husband, W. G. Simpson, from whom she had secured a divorce sometime in the year 1944, were remarried on May 18, 1946. Shortly thereafter, a supplemental and amended opposition was filed in the Juvenile Court wherein her husband joined the relatrix in opposing the adoption. No further proceedings were taken in the Juvenile Court.

It appears that the relatrix has continuously endeavored to regain the custody of the child since it was first taken by the respondents on March 5th.

The present habeas corpus proceedings were instituted by the relatrix and her husband on November 26th, 1946 in the District Court of Sabine Parish. After various exceptions had been filed, a trial on the merits was had. After the trial on the merits was completed, the lower court sustained a plea of lis pendens, previously filed, and dismissed the cause as in case of nonsuit. The relatrix and her husband applied for the exercise of our supervisory powers and a rule was issued ordering the respondents to show cause why the relatrix and her husband should not be granted the immediate possession of her minor child. The matter has been submitted for our determination.

After Mrs. Simpson remarried her husband, she returned to Groves, Texas, her former home, and now resides with her husband and three children, all boys, ages 18, 15 and 10 years, issue of their former marriage. Mr. Simpson testified that he was willing for his wife to bring the baby to their home and rear it as their own. He stated that he intended to adopt it as his own. There is nothing in the record to indicate that the child would not be well cared for in the Simpson home or that the mother is unfit to have its custody.

The respondents undoubtedly knew that Mrs. Simpson was not going to consent to

an adoption of the child prior to and at the time the adoption proceedings were filed. We are not presented with a case where a child is left in the custody of others for a long period of time before a request is made for its return. From the evidence in this case, the respondents knew at the time they received the child, or within a few days thereafter, that Mrs. Simpson did not willingly give up the custody of the child, and would not consent to its adoption.

■ Prior to the amendment to Article 7, Section 52 of the Constitution, adopted in 1936, giving the Juvenile Court jurisdiction in adoption proceedings of children under seventeen years of age, the jurisprudence of this State was well settled that where a contest between a parent and a third person as to who should have the control and care of a minor, that the court exercising general civil jurisdiction was the proper and exclusive tribunal to decide the issue. In re Owen, 170 La. 255, 127 So. 619.

The amendment giving the Juvenile Court jurisdiction in adoption proceedings did not in our opinion give the Juvenile Court jurisdiction over a contest between a parent and a third person for the custody of a minor. The exclusive jurisdiction in such a contest still lies in the court exercising general civil jurisdiction.

■ The plea of lis pendens is not well founded for the reason that the cause of actions are entirely different and are not such that present concurrent jurisdiction. In the first place the Juvenile Court has exclusive jurisdiction in adoption proceedings of children under seventeen years of age and in the second place the civil district court has exclusive jurisdiction over a contest between a parent and a third person for the custody of a minor.

■■ Under the provisions of Act No. 91 of 1942, an unmarried mother may legally surrender the custody of an illegitimate child to institutions or social agencies, or to a juvenile court. The surrender of custody must be by formal act before a notary public and two witnesses. The instrument executed by the relatrix purporting to surrender the custody to the juvenile court does not meet this requirement. While it purports to be signed before two witnesses, the evidence shows that it was only signed before one witness. There is an affidavit at the bottom of the instrument, signed by one Lee S. Sibley, to the effect that he was a witness to the signature of the relatrix and saw her and the subscribing witnesses sign the instrument; however, the evidence shows that there was no such witness present when the instrument was signed. Be that as it may, the instrument could not be sufficient to comply with the provisions of the act because it is contemplated therein that the mother must go before a notary public and two witnesses and by a formal act surrender the custody of the child. The re-

spondents evidently construed the instrument to be a legal surrender of the child to the Juvenile Court because they did not set forth in their petition how the child came into their possession, and allege no information with respect to the child's parent or parents, in compliance with Section 3 of Act No. 154 of 1942. The instrument relied on by the respondents was not executed in accordance with the provisions of Act 154 of 1942 and could not be construed as a surrender of the child to the Juvenile Court for the reason that adoption is a creature of the law and is only what the law makes it. To establish the relation the statutory requirements must be strictly complied with. Otherwise the act of adoption would be an absolute nullity. Owles v. Jackson, 199 La. 940, 7 So. 2d 192. Any order of the Juvenile Judge under the proceedings awarding the custody of the child to the respondents would be void. Under the holding in the case of State ex rel. Herbert v. Renaud, 157 La. 776, 103 So. 101, the relatrix could assert her right to the custody of her child in the civil district court if the juvenile court had awarded the custody of the child to the respondents without the consent of relatrix, because such an order would have been void and could have been collaterally attacked. Such being the case, she certainly could assert her right before such an order was executed.

■ This Court has always recognized the paramount right of the parent to its

minor child unless it is proven that the parent is unfit to have its custody and control.

■■ Prior to the adoption of Act No. 154 of 1942, adoption was effected by the execution of a notarial act wherein the parent or parents evidenced their consent and signed the act itself. We do not think the recent act has changed the situation insofar as the requirement of the consent of the parents. This Court held in Re Brands' Estate, 153 La. 195, 196, 95 So. 603, that where a father who had been awarded the custody of a child in divorce proceedings consented to its adoption by a third person without the consent of the child's mother rendered the adoption null and void. The consent of the parents of a child sought to be adopted is essential and sacramental. State ex rel. Monroe v. Ford, 164 La. 149, 113 So. 798. We are not confronted with a case where a child, sought to be adopted, had been previously taken away from its parents because of their moral unfitness or otherwise. We express no opinion in that respect.

■ Habeas corpus is a summary proceeding and, as applied to infants, the primary object is to determine who is entitled to the custody of the child without delay or the hindrance of collateral issues.

■ The paramount right of the relatrix to the custody of her minor child should not be deferred until a final determination of an adoption proceeding which could not

deprive her of the right to her child. Without her consent there could be no adoption. She has consistently refused to give her consent and should not be denied a natural and legal right to await the outcome of a vain and useless proceeding.

For the reasons assigned the judgment of the District Court is annulled and set aside. The plea of lis pendens is overruled. It is now ordered, adjudged and decreed that the relatrix, Mrs. Leola Simpson, have possession of her minor child, Sandra Jean, referred to by respondents as Betty Kay Holt.

All cost to be paid by respondents.

HAMITER, Justice (dissenting).

On the refusal of the District Court of Sabine Parish to issue the writ of habeas corpus, relators invoked our supervisory jurisdiction, seeking the writ of mandamus, to compel that court to issue it. Hence, we are called upon to determine here whether or not the judgment of the district court, dismissing the habeas corpus proceedings, was correct.

If this were a case involving simply and merely the right of a natural parent to her child, her resorting to a habeas corpus proceedings in the district court for the purpose of regaining its custody would be proper. The instant matter, however, presents something more than that; it is quite different. Here, adoption proceedings in the Juvenile Court of Sabine Parish had been instituted, prior to the filing of this suit, by the respondents who enjoyed the actual custody and control of the child, as well as consent for their adopting it, given to them by the child's mother in a written instrument.

After the commencement of the adoption proceedings, and while it was pending, only the Juvenile Court of Sabine Parish, in my opinion, had jurisdiction of the child, especially the matter of its custody. According to Article 7, Section 52 of the Louisiana Constitution of 1921 (as last amended by Act 198 of 1938), the juvenile courts of this state are vested with jurisdiction "in all adoption proceedings of children under seventeen years of age." If the district court had assumed jurisdiction, that provision of the Constitution would have been contravened. And for us to hold now that the district court should have issued the writ of habeas corpus is to nullify such constitutional provision and render juvenile courts powerless to act in adoption cases.

Furthermore, since the juvenile court had exclusive jurisdiction, the district court not only lacked jurisdiction but also it was without right to issue the writ of habeas corpus. In Article 7, Section 2 of the 1921 Constitution, it is said:

"The Supreme Court, the Court of Appeal, and each of the judges thereof, subject to review by the court of which he is a member, and *each district judge throughout the State* including judges of the Civil

and Criminal District Courts in the Parish of Orleans, *may issue writs of habeas corpus,* in behalf of any person in actual custody *in cases within their respective jurisdictions;* * * *." (Italics ours)

The phrase "within their respective jurisdictions" modifies or refers to the word "cases," not the word "person." State ex rel. Steen v. Wade et ux., 207 La. 177, 20 So.2d 747.

A determination by the juvenile court of the right of the relatrix to the custody of her child need not be deferred until the conclusion of the adoption proceedings, as the majority opinion suggests would occur if the writ is not issued. That question, as well as the incidental one respecting the sufficiency of the written instrument by which relatrix gave to respondents custody of the child and consent for its adoption, could be immediately decided through a trial of the opposition that she filed in the adoption proceedings. And to insure an immediate hearing on that opposition, the supervisory powers of this court are at her command.

My opinion is, therefore, that the district court correctly refused to issue the writ of habeas corpus, it being without jurisdiction and without right to do so.

I respectfully dissent.

HAMITER and HAWTHORNE, J., dissent from the refusal to grant a rehearing.