290 So.2d 675 (1974)
Patricia Beard WOOD
v.
Mr. and Mrs. Edward S. BEARD.
No. 53714.
Supreme Court of Louisiana.
February 18, 1974.
Concurring Opinion March 6, 1974.
*676 Dudley P. Spiller, Jr., National Juvenile Law Center, Doris Falkenheiner, Legal Aid Society of Baton Rouge, Baton Rouge, for plaintiff-applicant.
J. Michael Small, Gravel, Roy & Burnes, Alexandria, for defendants-respondents.
DIXON, Justice.
This is a habeas corpus proceeding brought by the mother of a two-year-old daughter against the child's maternal grandparents. We granted writs to review the decision of the Court of Appeal (280 So.2d 567) affirming the district court which held that the "best interests" of the child required that she remain with the grandparents.
The evidence is not in conflict. Four witnesses testified at the trial: plaintiff, the mother; defendant, the grandfather; the grandfather's employer; the grandfather's landlord.
The baby was born August 13, 1970 in New York, while plaintiff was in custody awaiting extradition to California. Plaintiff and her husband had lived in California since 1968. As the result of an altercation with their landlord, plaintiff and her husband were charged with several criminal offenses and fled to New York. Upon being returned to California, plaintiff pleaded guilty to assault and was sentenced to one year in jail, with credit for time served (more than a year) and placed on probation. Plaintiff was involved in no other criminal activity either before or after that occasion.
Five weeks after the infant was born in New York, plaintiff released her child to her parents until she could care for her. When plaintiff was released from jail in California in June, 1971 she returned to Alexandria and spent a month with her parents and child. She desired to return to California, however, where her husband was still in jail, but her parents refused to allow her to take the child. Plaintiff returned to California, obtained employment and satisfactory living accommodations. She then telephoned her parents and was again refused the custody of her child.
Plaintiff testified that she then consulted an attorney who, after three months time, advised her to come to Louisiana and take her child, advice rejected by plaintiff because she "wanted to go through court to make sure everything was right." She then obtained assistance from the Legal Aid Society of Baton Rouge, who filed suit on her behalf on April 6, 1972.
The question to be decided is whether this mother is to be deprived of the custody of her infant child because it is to the child's "best interest" to be placed with the grandparents. Neither the trial court nor the Court of Appeal found the plaintiff to be unfit; nor did they find that she had forfeited her right to parenthood; nor did they find that the mother was unprepared or unable to provide a home for her child. Both courts repeated the correct rule of lawthat the parent has the paramount right to the custody of *677 the child, and may be deprived of that custody only when there are compelling reasons. The trial court, apparently comparing the abilities of the mother and the grandparents to care for the child, concluded that custody in the grandparents would serve the best interest of the child. The Court of Appeal called this a factual issue and declined to overturn the ruling of the district court.
It is in the best interest of the child of tender years to grant custody to the mother unless the mother is unfit or otherwise unsuitable. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971) and cases there cited. In the application of this rule it is not appropriate for the court to compare the mother's home with another when the mother and her home are acceptable, and then award the custody to the contestant who can provide greater advantages for the child. State ex rel. Rothrock v. Webber, 245 La. 901, 161 So.2d 759 (1964); State ex rel. Perdue v. Carkuff, 182 La. 920, 162 So. 729 (1935). The best interest of the minor is not served by denying parental custody after deciding which of two qualified, competing family groups can deliver a quality of child custody more pleasing to the court. A judicial comparison of qualified competitors for custody of a child does violence to the rule of "parental right." (See Blow v. Lottman, 75 S.D. 127, 131, 59 N.W.2d 825 (1953): "If the mother is a fit parent she cannot be denied custody of her children even though the grandmother is better qualified to rear them.").
When the parent competes with non-parents of the child, the parent's right to custody is superior, unless the parent is unable or unfit, having forfeited parental rights. State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760 (1950); State ex rel. Simpson v. Salter, 211 La. 918, 31 So.2d 163 (1947); State ex rel. Martin v. Talbot, 161 La. 192, 108 So. 411 (1926); Ex parte Lincoln, 128 La. 278, 54 So. 818 (1911). See also State ex rel. Lombardo v. Miller, 232 La. 617, 94 So.2d 888 (1957). No such forfeiture has been found by either court below, and the evidence will not support such a finding. Nor will the evidence support a conclusion that custody in the parent will be inimical to the welfare of the child.
Plaintiff cites the recent case of Griffith v. Roy, 263 La. 712, 269 So.2d 217 (1972), and argues from it that the district court had no "jurisdiction to deprive relatrix of the custody of her child" during the marriage. We do not agree. The district court may do more than inquire into the parentage of the child in a habeas corpus action, but should order the child "placed in the custody of a proper person." C.C.P. 3830. To order a child placed in the custody of a parent who is not "a proper person" would be to ignore the welfare of the child. The welfare of the child, and not simply the enforcement of a parental right to the possession of the child, is of primary concern to the court. It is consequently appropriate that the district court inquire, when the issue is raised, whether the parent is unfit or unable to care for the child.
Plaintiff argues that only the juvenile courts have jurisdiction to interfere with parental authority. This is too narrow an interpretation of Griffith v. Roy, supra. We have previously held that the juvenile courts do not have jurisdiction over a dispute between private litigants for custody of a child not within the purview of R.S. 13:1570 et seq. In re Sherrill, 206 La. 457, 19 So.2d 203; 19 Tul.L.Rev. 464. Plaintiff's ultimate argument is that the result of Griffith v. Roy, supra, is that no court may inquire into the fitness of a parent seeking custody while the marriage is in existence and there is no separation or divorce action pending. This argument ignores the universally recognized proposition that the state and its courts are always concerned with the welfare of the child.
At the instance of the plaintiff, the Court of Appeal granted a rehearing *678 and considered the effect of Griffith v. Roy, supra, upon the case now before us, and concluded that the district court was not without jurisdiction to consider the fitness of the mother in a habeas corpus action brought by her. With this ruling we agree, but we do not agree that the mother should have been deprived of the custody of her child.
Plaintiff has a home, a job, friends who help her, and satisfactory arrangements for the care of her child while she works. Her conviction for assault does not alone, make her unfit to care for her child. The burden is on the defendants to show the disqualification and unfitness of the mother. Heitkamp v. Ragan, 142 La. 81, 76 So. 247 (1917). This heavy burden the defendants have failed to discharge. The courts below erred in holding that the best interests of the child required denying custody to the mother.
For these reasons the judgment of the Court of Appeal is reversed and there is now judgment in favor of plaintiff, Patricia Beard Wood, and against defendants, Mr. and Mrs. Edward S. Beard, ordering that the child, Abre Lee Wood, be placed in the custody of plaintiff, all at the cost of defendants.
BARHAM, Justice (concurring in the decree only).
The majority quickly concludes that a mother who had temporarily and voluntarily left her minor child with the child's maternal grandparents had the "parental right" to the child's custody in this habeas corpus proceeding. The majority then tries to make an explanation of the intent of the recent case of Griffith v. Roy, 263 La. 712, 269 So.2d 217 (1972). Most of the majority's opinion is given to this task. In my opinion, the majority makes grave error in the extensive dictum about Griffith v. Roy.
The mother and father of the child, whose custody was sought in this habeas corpus proceeding, are neither separated nor divorced. The father is absent, being incarcerated in a California prison. The paternal authority during the marriage vests in the father and mother with certain limited preferences in the father. C.C. Art. 216. A child remains under the authority of his father and mother until majority or emancipation. C.C. Arts. 216 and 217. Children under the age of puberty cannot quit the paternal house without permission of the parents. C.C. Art. 218. The father is the administrator of the child's estate during the marriage unless the father be interdicted or absent, in which case the mother is the administrator. C.C. Art. 221.
Thus, it may be seen that during the marriage no person is given permission to interfere with the paternal authority. The State, of course, has a superior right and interest in the statuses of all of its citizens. Grandparents, other blood relatives, or strangers have no right to exert paternal authority during a marriage when at least one of the parents has legal custody, unless they obtain the right to exercise all or part of the paternal authority over the child through State intervention. Griffith v. Roy, supra.
In the suit we consider, there is no State intervention. The mother of the child, whose father is absent, has applied for custody of that child through a habeas corpus proceeding. The habeas corpus proceeding is designed to test only the legal authority of the person holding the child. C.C.P. Art. 3821. No other question is before a district court in a habeas corpus proceeding except the question of which of the parties has legal authority to retain custody. The majority must readily concede that the only person with legal authority, with "paternal" authority over this child, is the mother. As against a stranger to a marriage, the judicial authority of the district court ends when the simple determination of legal authority is made.
As I have already indicated, the State has the right to question paternal authority during the marriage, as well as after the termination of the marriage. La.Const. *679 Art. 7, § 52 provides that juvenile courts shall have jurisdiction "* * * of cases of the State of Louisiana in the interest of children under seventeen years of age, as may be provided by the Legislature, brought before said Courts as delinquent or neglected children * * *." (Emphasis here and elsewhere supplied.) This jurisdiction is expanded upon in R.S. 13:1561 et seq., in compliance with the mandate to the Legislature in Article 7, § 52.
R.S. 13:1570 provides: "Except as otherwise provided herein, the court shall have exclusive original jurisdiction in proceedings:
"A. Concerning any child whose domicile is within the parish or who is found within the parish:
(1) Whose parent or other person legally responsible for the care and support of such child neglects or refuses, when able to do so, to provide proper or necessary support, education as required by law, or medical, surgical or other care necessary for his wellbeing; or who is abandoned by his parent or other custodian; or who is otherwise without
proper care, custody, or support; * * *."
The last paragraph of R.S. 13:1570 provides:
"Nothing contained in R.S. 13:1561 through 13:1592 shall deprive other courts of the right to determine the custody of children upon writs of habeas corpus, or to determine the custody of children when such custody is incidental to the determination of cases pending in such other courts."

R.S. 13:1569(11) defines "legal custody" as a legal status created by court order. A neglected or dependent child is defined in R.S. 13:1569(16) as one abandoned by his parents, tutor or other custodian, or one who is without proper parental care and control or subsistence, or other care or control necessary for his well being because of the faults or habits of his parents, tutor or other custodian or their neglect to provide them. Thus, it may be seen by constitutional and legislative authority, Louisiana has determined that the State may exercise its interest in the well being of children in the State through one instrument, the many juvenile courts throughout the State.[1] The State is only interested in the "delinquent" and "neglected" children of the State. The State may interpose itself between a child and paternal authority, whether exercised by parents or other legal custodians, only in those cases when the child is "delinquent" or "neglected". It may do so in only one court, and that is the juvenile court.[2] As we said in Griffith v. Roy, supra, a third person cannot through devious means, deprive the juvenile court of its exclusive jurisdiction over neglected children.
The fact that the grandparents of the child had the physical custody of this child gave the grandparents no legal authority over the child. The grandparents had only the permissive grant of authority by the mother, which is authorized by the Civil Code. The grandparents never became the "legal custodians" of the child. The unfitness of the mother who had legal custody, who was vested with "paternal authority", never became an issue before the district court in this habeas corpus proceeding. The majority apparently feels that such a jurisdictional limitation would have left *680 this child in untenable circumstances had the mother, who filed the writ of habeas corpus, been an unfit and "neglectful" mother. This great disturbance appears to impel them to conclude that district courts are like God, having powers to decide the fate and the status of individuals even when there is no legal jurisdiction for such a determination.
Even if this mother were such person as to be totally unfit to have legal custody of this child, the State was not without remedy for protecting the child. Our Court seems to think that a court is the State. Whenever courts become the state, they will cease to function as a separate and distinct arm of government. If the State desired to protect the interests of this child, it could have done so even though, and even as, the mother sought legal custody through a habeas corpus proceeding. The State could have filed a petition of neglect, declaring that the "parent or other person legally responsible" neglected the child. R.S. 13:1570. "Any person" interested in the child could have informed the juvenile court that the "legal custodian" was neglecting this child, whereupon, after proper inquiry and investigation, "* * * the [juvenile] court may make such informal adjustment as is practicable without a petition or may authorize a petition to be filed by any person; * * * the proceedings shall be entitled, `The state of Louisiana in the interest of ______ ______, a child under seventeen years of age'." R.S. 13:1574.
Only one case, In re Sherrill, 206 La. 457, 19 So.2d 203 (1944), has ever stated a contrary position. That case is incorrect and is not a proper interpretation of the present law. It held that a child could not be declared neglected while being properly cared for by some person, although that person did not have "legal custody" of the child. That erroneous holding in In re Sherrill should be overruled. In the absence of the holding in In re Sherrill, a child is fully protected when in the State of Louisiana and in the custody of anyone when those who have "legal custody" neglect or abandon the child. Griffith v. Roy, supra, set forth the basic groundwork for proper determination of the jurisdictions of the respective courts in a determination of the status of children in the State of Louisiana. It specifically limited the district court's jurisdiction, and therefore its legal consideration in habeas corpus proceedings involving child custody, to the single question of which party had legal authority"legal custody"over the child. Without any conflict between courts, without any jurisdictional fights, very simply and smoothly, one court can determine legal authority for custody and the other court can determine the issue of unfitness and neglect which would deprive the legal custodian of the right to custody. See my dissent and the dissent of Mr. Justice Tate to the denial of writs in Gervais, wife of Borras v. New, wife of Falgoust, of this Court, decided February 15, 1974, 289 So.2d 161 (1974).
A reading of the constitutional provisions, the Civil Code articles, the statutes and the Code of Civil Procedure documents thoroughly the views above expressed. Our Code of Civil Procedure fortifies the substantive law. C.C.P. Art. 10(5) provides that a court, which is otherwise competent, has jurisdiction in "A proceeding to obtain the legal custody of a minor if he is domiciled in, or is in, this state; * * *." This article, read together with C.C.P. Art. 3822, which provides: "Habeas corpus proceedings may be brought in the parish in which the defendant is domiciled or the parish in which the person detained is in custody.", recodifies the old Code of Practice Article 792, defining the habeas corpus proceeding. The majority appears to take great solace from the fact that C.C.P. Art. 3830 permits a judgment in a habeas corpus proceeding to: "* * * order the person released or placed in the custody of a proper person." *681 C.C.P. Art. 3828 also provides that during the pendency of the habeas corpus proceeding, "* * * the court may award the custody to a proper person. * * *" The official comment simply states that the term "proper person" includes welfare institutions, as well as individuals.
I find no authority under these two articles which requires a "proper person" to be construed to be any person, whether he has legal authority or not. Certainly the final judgment is governed by the substantive law which is laid down in the Constitution, the Civil Code, and the Revised Statutes. It is absolutely clear to me that the substantive provisions of the Constitution, the Civil Code and the statutes, require that a judgment in a habeas corpus proceeding can only exact custody from the one who holds the child if the party claiming the child has legal authority over it. The State, an institution of the State, or an officer of the State, may gain that legal authority through the State's intervention in a juvenile court proceeding.
The majority opinion has totally disregarded the civil law concept of paternal authority and the constitutional and statutory provisions regarding the State's right to question paternal fitness when there is no separation or divorce proceeding or termination of paternal authority. The majority opinion does a grave injustice to the civilian tradition and the primary interest in preserving the family unit and paternal authority. It further has totally disregarded the constitutional and statutory mandates of court jurisdiction. It appears to set the court up as a super ego of the State, giving to the court the authority to intervene in the absence of constitutional or statutory authority. It tends to destroy an institution and to compromise the independence of the judiciary.
I thoroughly disagree with the rationale of the majority opinion, but I concur in the decree since the party with legal authority obtained the custody of the child.
NOTES
[1] While it is true that in most jurisdictions in this State district courts also sit as juvenile courts, that distinction between the district court sitting as a civil or a criminal court and sitting as a juvenile court, is made both constitutionally and legislatively. See La. Const. Art. 7, § 52 and R.S. 13:1561.
[2] Exceptions are made for criminal prosecutions of certain children who commit "delinquent" or "criminal" acts.