291 So.2d 462 (1974)
David Lee CANTRELL, for Adoption of William Earnest Talley, Jr., Plaintiff and Appellant,
v.
William Earnest TALLEY, Sr., Defendant and Appellee.
No. 4457.
Court of Appeal of Louisiana, Third Circuit.
March 12, 1974.
*463 Edward A. Kaplan, Alexandria, for plaintiff-appellant.
Lewis O. Lauve, Alexandria, for defendant-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
CULPEPPER, Judge.
The plaintiff, David Lee Cantrell, seeks to adopt his step-son, William Earnest Talley, Jr., who is the legitimate child of plaintiff's wife by her previous marriage to William Earnest Talley, Sr. The defendant, William E. Talley, Sr., opposes the adoption. From an adverse judgment, plaintiff appealed.
The principal issue is whether the consent of the defendant father to the adoption is not necessary under LSA-R.S. 9:422.1 which reads in pertinent part as follows:
"If the spouse of the petitioner is the legitimate parent of the child * * * then the consent of the other legitimate parent is not necessary if the first and second or the first and third conditions exist:
"(1) The spouse of the petitioner * * * [has] been granted custody of the child by a court of competent jurisdiction and

* * * * * *
"(3) The other legitimate parent is a nonresident of this state and has failed to support the child for a period of one year after judgment awarding custody to the mother * * *."
The facts are that the child's mother, Violet Elizabeth Heard, was first married to the defendant, William Earnest Talley, Sr., on December 21, 1964. Of this marriage the child, William E. Talley, Jr., was *464 born on August 8, 1967. Mr. and Mrs. Talley had marital difficulties. They were legally separated three different times and finally divorced on November 25, 1970. The judgment of divorce granted custody to the mother, with visitation rights to the father every other week-end, and ordered the father to pay to the mother the sum of $25 per week for the support of the child.
At the time of this judgment, Mr. Talley was employed as a foreman at the Army Ammunition Plant in Minden, Louisiana, earning approximately $8,000 per year. However, in September of 1971 he and about three-fourths of the employees were laid off. He was unemployed for a period of about five months, during which time his only income was unemployment compensation in the sum of $220 per month. Nevertheless, he paid the $25 per week child support until in January of 1972 he filed a rule to have the payments reduced because of his reduced income.
In the meantime, Mrs. Talley had married Mr. Cantrell in December of 1971. At the hearing on the motion to reduce Mr. Talley's child support payments an agreement was reached, and a judgment on the rule was entered on February 24, 1972, terminating Mr. Talley's visitation rights and relieving him of the payment of any further child support. However, that judgment expressly states "This agreement between the parties herein is not to be construed or used in any manner in an adoption proceedings as a waiver of William Earnest Talley's necessary consent to said adoption."
In the present proceedings Mr. Talley testified he agreed to give up his visitation rights because he had experienced great difficulty with his wife in arranging times for visitation, and because he was unemployed at the time and could not afford child support. However, he insisted the judgment include a provision that it would not be construed as an abandonment by him of his child or as a consent to an adoption.
On February 29, 1972, Mr. Talley found employment at the Air Force Exchange, earning about $68 a week. Although the judgment had relieved him of the legal obligation to make child support payments, he sent a check for $50 to the child in March of 1972. Then in June of 1972, he was transferred to Hawaii, where his earnings were about $300 per month. He sent money orders in the sum of $50 each to the child in October, November and December of 1972. None of these money orders were cashed by the mother of the child.
Mr. Talley testified that although he did not see his child after February 24, 1972, the date of the judgment terminating his support payments and visitation rights, he did try to maintain contact with the child through Mrs. Talley's parents, who live in Florien, Louisiana. Mrs. Cantrell was living in Alexandria. Talley says he tried to arrange a telephone conversation with his son through his in-laws, but no such arrangements were ever made. He explained that it was his understanding that subsequent to the judgment he could not "bother" his wife. Also, Mr. Talley testified that after receiving notice that the child's mother had not cashed the money orders, he started purchasing a $25 bond in the name of his son twice a month. This suit for adoption was filed on May 16, 1973.
Plaintiff contends first that the first and third conditions of LSA-R.S. 9:422.1 quoted above are met. Of course, the first condition is satisfied because plaintiff's wife has legal custody of the child. But the third condition is not satisfied. Although defendant is a nonresident of this state, he has not failed to support the child for a year after the mother was awarded custody. He paid the $25 per week required by the original divorce judgment until he filed the rule to reduce the payments in January of 1972. At the most, he failed to make payments during January and up to February 24, 1972, when he was relieved by the judgment of making any further payments.
*465 In Re Spraggins, 234 So.2d 462 (La.App. 1st Cir. 1970) held that where the divorce judgment awarded custody to the mother and relieved the father of any financial responsibility for support of the children, the father's consent was necessary to adoption by the step-father, even though the father was a nonresident and had not paid any child support in more than one year since custody was awarded to the mother. In the present case, we have the additional factor that the judgment expressly states the termination of support payments cannot be construed as a waiver of Mr. Talley's consent to an adoption. Also, defendant voluntarily continued the support stated above, even though relieved of support obligation.
In Re Spraggins, supra, relies in part on the well established jurisprudence that adoption statutes, being in derogation of the natural rights of legitimate parents must be strictly construed in favor of such parents, Roy v. Speer, 249 La. 1034, 192 So.2d 554 (1966); In Re Ackenhausen, 244 La. 730, 154 So.2d 380; In Re LaFitte, 247 La. 856, 174 So.2d 804.
See also In Re Adoption of Schieman, 204 So.2d 433 (La.App. 4th Cir. 1967) where the court held a judgment relieving a nonresident mother of her monetary support obligation rendered LSA-R.S. 9:422.1(3) inapplicable.
Applying these rules to the present case, it is clear that the consent of Mr. Talley to this adoption has not been rendered unnecessary under the provisions of LSA-R.S. 9:422.1.
Plaintiff makes an additional argument that Mr. Talley's disinterest and indifference toward the child and the natural mother constitutes a forfeiture of his parental rights. We note that plaintiff does not rely on LSA-R.S. 9:403, which provides the procedure for declaring a child abandoned by a parent when the whereabouts of the parent are unknown or the parent has refused to provide for the child for a period of four months under circumstances showing an intention to permanently avoid all parental responsibility. The facts here would not support such a cause of action.
The only statute cited by plaintiff is LSA-R.S. 9:432(B), which states the general rule that in all final decrees of adoption the basic consideration "shall be the best interest of the child." Under this statute plaintiff argues that Mr. Talley's agreement to the judgment terminating his visitation rights and his obligation to pay support for the child, together with the fact that he did not see or visit the child for a period of more than a year following that judgment, requires the court to grant this adoption because it is in the best interest of the child.
LSA-R.S. 9:432(B) must be read in the context of LSA-R.S. 9:424 et seq., which provide the procedure for petitioning for an adoption, the investigation and report of the Department of Public Welfare, the hearing, the interlocutory decree, the visitations in the adoptive home and finally the entry of the final decree of adoption. LSA-R.S. 9:432(B) simply states the general rule that after all of these proceedings the basic consideration of the court in determining whether a final decree shall be entered is "the best interest of the child." This statute does not allow the court to enter a final decree of adoption on a simple showing that it is for the best interest of the child, regardless of the rights of the natural parent. There must be a showing that the natural parent has lost his rights to the child, either by voluntary surrender, LSA-R.S. 9:402, by abandonment, LSA-R.S. 9:403-9:407, or under LSA-R.S. 9:422.1(1) discussed above, or some other statutory provision. Here, there is no showing that defendant has lost his parental rights. His consent to the adoption is necessary.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.