313 So.2d 915 (1975)
Tyrone CAWTHORNE et al., Plaintiffs-Appellees,
v.
Linda Faye WILLIAMS et al., Defendants-Appellants.
No. 12615.
Court of Appeal of Louisiana, Second Circuit.
June 3, 1975.
Rehearing Denied July 1, 1975.
*916 Caddo-Bossier Legal Aid Society by Steven R. Thomas, Shreveport, for defendants-appellants.
Eugene J. Coen, Shreveport, for plaintiffs-appellees.
Before PRICE, HALL and DENNIS, JJ.
DENNIS, Judge.
This is a habeas corpus proceeding to determine custody of a minor, Patrick Jerome Williams, brought by his natural father, Tyrone Cawthorne, and natural paternal grandparents, T. Cawthorne and Gladys Cawthorne, against his natural unwed mother, Linda Faye Williams, and natural maternal grandmother, Mattie Mae Brown. The district court rendered judgment awarding legal and physical custody of the child to T. and Gladys Cawthorne, the natural paternal grandparents. Linda Faye Williams appealed. For the reasons hereinafter assigned we affirm.
The district court is authorized in a habeas corpus proceeding to determine which person is entitled to legal, as well as physical, custody. C.C.P. Art. 3830; Wood v. Beard, 290 So.2d 675 (La.Sup.Ct. 1974).
In making either an original award of custody or a change in custody in a habeas corpus proceeding the following legal principles are applicable. It is in the best interest of the child of tender years to grant custody to the mother unless she is unfit or otherwise unsuitable. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971). When the mother competes with nonparents her right to custody is superior, unless she is unprepared or unable to provide a home for the child, is unfit for custody, or has abandoned custody of the child. Wood v. Beard, supra; State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760 (1950); State ex rel. Simpson v. Salter, 211 La. 918, 31 So.2d 163 (1947); State ex rel. Martin v. Talbot, 161 La. 192, 108 So. 411 (1926); Ex parte Lincoln, 128 La. 278, 54 So. 818 (1911); State ex rel. Lombardo v. Miller, 232 La. 617, 94 So.2d 888 (1957). The burden of proving that the mother is *917 unfit, unable or unwilling to care for the child is on the nonparents in such a proceeding. Wood v. Beard, supra; Heitkamp v. Ragan, 142 La. 81, 76 So. 247 (1917).
At the time Patrick was born on August 9, 1967 both parents were unmarried high school students living with their respective parents in Shreveport. Several months after his birth, he was entrusted to the care of his paternal grandparents, T. and Gladys Cawthorne, so that his mother, Linda Williams, could complete high school. In 1968 Linda gave birth to a second illegitimate son, who without dispute is not the child of Tyrone Cawthorne. In 1972 Linda took both children with her for two months on a visit to Boston after which they all returned to Shreveport. In early 1973 she moved to Los Angeles leaving both children in Shreveport. She has returned to Shreveport several times since, one in 1974 to successfully oppose the adoption of Patrick by T. and Gladys Cawthorne. However, before this habeas corpus proceeding began on October 23, 1974 Linda did not seek to take either Patrick or the other child to live with her in Los Angeles.
Except for the two month period in Boston in 1972, the evidence does not definitely reflect that Linda has ever personally supported or cared for either of her children. She testified that she was never able to find work in Shreveport. During her visit to Boston she was involved in an automobile accident and was not able to maintain employment there. After moving to Los Angeles in 1973, she was virtually unemployed for about five months, during which time she made false representations to the state of California in an effort to receive welfare benefits. She testified she has sent money home to support Patrick from time to time, but did not name any specific amounts. The record is convincing that Linda has been unable to provide a home for her children and that they have been reared almost entirely by their grandparents.
Despite her past inability to support her children or have them live with her, she contends that she is now able and willing for them to reside with her in California. However, the only evidence presented in support of this contention was her testimony that she has recently gotten a job as an "assistant nurse" in a convalescent hospital and has a "nice apartment." Her testimony was uncorroborated and no salary figure or description of her living quarters were given.
We are convinced from evidence of long periods of time spent away from her child, lack of significant financial support, failure to assume personal responsibility for her child, and the fact that she has expressed no desire to have Patrick or her other child with her in California prior to the instant proceeding, that Linda is unable and unprepared to provide a home for Patrick at this time. This case is distinguishable from Wood v. Beard, supra, a habeas corpus proceeding in which a married mother who had placed her child with grandparents temporarily for about sixteen months due to her incarceration was restored to custody of her child. In that case it was established the mother seeking custody had a husband, a home, a job, friends who helped her, and satisfactory arrangements for the care of the child while she worked. In the instant case, although Linda gave some testimony to the contrary, the evidence convincingly preponderates in favor of the conclusion that the mother is not yet prepared or able to provide a home for her child.
Tryone Cawthorne, the natural father of the child, has married and established a separate domicile. He has formally acknowledged Patrick as his son and in his testimony expressed willingness to continue contributions toward his son's support. Tyrone did not ask for custody, however, and instead joined in the prayer that T. *918 and Gladys Cawthorne be awarded custody of Patrick.
Over the years Gladys Cawthorne has done more to promote the welfare of Patrick than any other single person. Without dispute she alone was responsible for his enrollment and attendance in the headstart program, kindergarten, and the first grade of elementary school. She has also taken him with her to church regularly. The evidence, however, is in sharp conflict as to exactly how much time Patrick has spent in her home. Gladys Cawthorne's testimony that, after she took Patrick into her care when he was a few months old, he lived with her for all but seven months of his seven years, was corroborated by her son, her husband and his sister. Although Linda Williams and her mother admit Gladys Cawthorne volunteered to act as mother to the child, they testified that she cared for Patrick primarily on weekends. Linda's sister, Mary Margaret Smith, on the other hand, testified that Patrick lived half the time at each house. The trial judge resolved the conflict by finding that the child had been cared for principally by Gladys Cawthorne.
Regardless of who has done the most for Patrick in the past, Gladys Cawthorne clearly is in the best position to provide a good home for him. Because of his living with them for several years the Cawthornes have grown to love the child and have tried to adopt him. T. Cawthorne is disabled and receives a pension of approximately $400 per month. Gladys Cawthorne, who successfully raised eight children of her own and engaged in domestic work for a number of years, is no longer regularly employed and is able to be a full-time homemaker. Mattie Mae Brown is single and works regularly five to six days per week for wages of about $40 per week. Her twenty-two year old daughter, Mary Margaret Smith, who lives with her, is employed but did not testify to the amount of her compensation or whether she could provide any support for the child.
In our opinion the evidence in the case supports a finding that Linda Williams is presently unable and unprepared to provide a home for Patrick and that his best interests will be served by awarding custody to his paternal grandparents. As this court stated in Stuckey v. Stuckey, 276 So.2d 408 (La.App., 2d Cir. 1973):
"* * * At some time in the future when [the mother] demonstrates more maturity and shows that she can provide a suitable home for raising her child, she can return to court and seek custody." Id. p. 411.
In light of the foregoing and due to the great amount of discretion accorded the trial judge in custody matters, the judgment appealed from is affirmed.
Affirmed.