SEXTON, Judge,
dissenting.
I respectfully dissent from the decision of the majority.
Appellant’s activities have caused her parents much agony and torment. They first learned of her pregnancy with Nathan on their way to court for the trial of a young man who helped her climb out of a window of their home. Apparently after serious consideration of the issue, the family decided that appellant and the child would return after the birth of the child to the home of her parents. There it was *294 hoped that appellant would gradually take on more and more responsibility of the care of the child. Initially she was only to prepare the child’s bottle, a task which she failed to accomplish more often than not. She was in and out of the house accepting almost no responsibility for the care of the child. She continued seeing various men during these periods and stayed with several of them without returning home for days at a time. She has conceded that she used marijuana regularly (although she denied the use of other drugs) and that she engaged in various activities with the “Satan’s Tramps” motorcycle group, although she contended she was never a member thereof.
One day, after her mother had asked appellant to fix the baby’s bottle while she bathed him, appellant having not prepared the bottle, came in the bathroom where the grandmother and the child were and announced that she was leaving and not returning. She was pregnant at that time by someone other than this child’s father, we gather. This pregnancy subsequently resulted in a miscarriage.
Appellant then drifted about, returning home from time to time for security and assistance when she felt it necessary. During these occasions, she virtually ignored the baby, leaving its care primarily to her mother. She eventually left to live with her current husband, who was the fourth or fifth man with whom she had taken up residence. They were married in December of 1978 after living together for some eight months and now have two children. Through all of this appellant’s parents did not take the child from her or force her out of the house. They obviously reluctantly tolerated her conduct and now are understandably concerned that, although appellant and her husband have been married for some two years, her stability and responsibility are not sufficiently established to warrant this change of custody. Certainly there is a significant chance that appellant will tire of current circumstances and revert to her previous lifestyle.
Thus we have a six-year-old child reared almost entirely by his grandparents subsequent to his clear abandonment by his mother, who virtually ignored him for three and one-half to four years. Now during the last two years she has lived a stable life and is apparently capable of providing a fit and proper home for her child.
The majority has made particular reference to Deville v. LaGrange, 388 So.2d 696 (La.1980), where a sharply divided Supreme Court affirmed the Court of Appeal’s reversal of the District Court and awarded the two-year-old child to the father after it had been with the grandparents for one month. The contest occurred subsequent to the death of the mother who was separated from the father. The Supreme Court specifically held that the father had not forfeited his paramount right to the child.
Deville is based on Wood v. Beard, 290 So.2d 675 (La.1974), which was a reversal of the Court of Appeal in awarding an approximately two-year-old child to the parent after the child had been with the grandparents some 16 months. The Wood court emphasized the importance of a child of tender years being with the parent. The court also was specific to point out that its mother had not abandoned or forfeited the child. The child was born while the mother was in jail and had been released to the grandparents because of that. After getting out of jail and spending a month with her parents, she attempted to take the child with her to California to be with her husband who was still in jail there. Her parents refused. So, obviously that mother did not abandon or forfeit the child.
I do not believe that the result of our majority is mandated by either Wood or Deville and believe that much of the appellate jurisprudence is an inappropriate extension of these cases. At least two cases cited by the majority which evolved from Wood and Deville resulted in the uprooting of a child from a long-standing, stable environment. In Powell v. Barsavage, 399 So.2d 1308 (La.App. 4th Cir. 1981), the Court of Appeal reversed the District Court and awarded an eight-year-old child to the *295 father after the child had been with the grandparents some five years. Likewise in Juneau v. Bordelon, 380 So.2d 208 (La.App.3d Cir. 1980), the Third Circuit affirmed an award of a child some six years of age to the parent after about five years with the grandparents.
However in Cawthorne v. Williams, 313 So.2d 915 (La.App.2d Cir. 1975), now Justice Dennis distinguished Wood and left an abandoned seven-year-old child with the grandparents after some six and one-half years, though concededly the mother in Cawthorne was not nearly so well re-established as appellant here.
In neither Wood nor Deville was there a clear abandonment. Furthermore Wood and Deville both note that forfeiture (Justice Dennis spoke in terms of “abandonment” in Cawthorne) may deprive the parent of the normal “paramount right to the child.” In Wood, at p. 677, the court stated:
“When the parent competes with non-parents of the child, the parent’s right to custody is superior, unless the parent is unable or unfit, having forfeited parental rights, [citations omitted] No such forfeiture has been found by either court below, and the evidence will not support such a finding.”
In Deville the court, at p. 698, noted:
“Parenthood itself confers a right to custody, but that right of parenthood may be forfeited by conduct which denies or rejects one’s child.” [footnote omitted]
Surely there is some point beyond which a parent ought not to be able to uproot a child from a stable environment. Is it 15 years, is it 10 years? It is not 6 years if our majority is correct. I see a clear abandonment (forfeiture) here though I agree a good bit of it can be said to be disinterest. However, at some point disinterest certainly becomes abandonment.
In my view this cause presents three factors which when taken together have not been squarely presented to our highest court; i.e. (1) abandonment, (2) that abandonment being of long-standing, and (3) rehabilitation of the parent. I suggest that under all these circumstances the evaluation should be based on what is in the best interest of the child, with stability of environment as a major consideration.
That is the analysis undertaken by the trial judge here, and I find no manifest error in his result. I therefore respectfully dissent.
FRED W. JONES, Jr., J., dissents for the reasons assigned by SEXTON, J.