492 So.2d 508 (1986)
ADOPTION OF BABY DOE.
No. 85-1232.
Court of Appeal of Louisiana, Third Circuit.
July 21, 1986.
Rehearing Denied August 19, 1986.
Writ Denied November 7, 1986.
*509 James E. Beal, Natchitoches, for defendant-appellant.
Poteet and Landry, John G. Poteet, Jr., Lafayette, for plaintiffs-appellees.
Before LABORDE, YELVERTON and FONTENOT[*], JJ.
H. WARD FONTENOT, Judge pro tem.
Baby Doe, an illegitimate, was born in Iberia General Hospital, Iberia Parish, on June 20, 1985. The unmarried mother of the child had agreed that she would surrender the child to the Catholic Social Services of the Diocese of Lafayette, Inc. for adoption. Before a formal surrender was accomplished, however, a notarial act of acknowledgement was recorded in Iberia Parish on July 3, 1985 by the respondent herein asserting that he was the father of the child. The surrender by the mother was executed and, subsequently, a petition by the agency mentioned above was filed on July 15, 1985 seeking an approval to place the child for adoption. The respondent filed an opposition to the petition and reconvened for custody in his own right. After a hearing, the trial court dismissed respondent's opposition. In written reasons, the court said that the respondent had "forfeited his right to object to the adoption because of a judicial determination of unfitness." The court also ruled that the child should be placed for adoption on a finding that it was in the child's best interest.
The first question presented to the court is whether the respondent had standing to object to the petition filed by the agency: In that regard, the controlling statute is L.S.A.-R.S. 9:422.14. It reads in pertinent part:
"A. The father of an illegitimate child may establish his right to oppose the adoption of his child. In order to establish this right, he shall acknowledge the child as his by either signing the child's birth certificate as the father of the child or by executing an authentic act of acknowledgement.
"B. (1) In order for an acknowledgement, as provided in Subsection A of this Section, to secure the father's right to oppose an adoption, such acknowledgement shall be made by recording the acknowledgement on the child's birth certificate *510 prior to an act of surrender executed by the child's mother pursuant to R.S. 9:402 or R.S. 9:422.3, a decree of abandonment of the child pursuant to R.S. 9:403, or a judgment terminating the mother's rights to the child pursuant to R.S. 13:1600 through 1605. If the child is born in Louisiana, and the acknowledgement is by authentic act, it must be recorded in the office of the clerk of court in the parish in which the child is born...."
The two paragraphs quoted above provide for the prerequisite acknowledgement to be made in one of two alternate ways. Either the father can sign the birth certificate as a father or he may execute an authentic act of acknowledgement. If the second method is employed, the act must be recorded in the office of the clerk of court in the parish in which the child is born. In the event that the second method is used, there is no need for the father to sign or otherwise to acknowledge paternity on the birth certificate. The reference to recordation "on the child's birth certificate" made in the first sentence of Subsection B is to the acknowledgement accomplished by signing the certificate. Acknowledgement by authentic act is treated separately in the last sentence of Subsection B. The two methods are independent and are not to be confused. The execution of the authentic act by the respondent herein and its timely recordation in the Parish of Iberia fulfilled the requirements of the cited statute.
Some uncertainty about this interpretation arises because no mention is made of the authentic act method of acknowledgement "to secure the father's right" in the first sentence of Subsection B. However, the sentence should be read to include the alternate method or else the steps regarding the filing of an authentic act detailed in the second sentence of that subsection would be meaningless for the purpose of this statute. A statute should be interpreted so as to give meaning to all of its parts. State v. Williams, 449 So.2d 744 (La. App.3rd Cir.1984) writ denied, 452 So.2d 172. Among other possible reasons, the alternate approach is provided for fathers who are prevented from signing or are not available for signature (as was the respondent herein) at the time that the birth certificate is prepared and filed. See L.S.A.-R.S. 40:43 et seq. Granting the same legal efficacy to both methods is a reasonable construction which gives the entire statute a unified and coherent import. Johnston v. Morehouse Parish Police Jury, 424 So.2d 1053 (La.App. 2nd Cir.1982) writ denied, 427 So.2d 1208.
Having concluded that the respondent established his right to oppose the adoption through compliance with the aforesaid statute, the court must address the questions of whether the trial court employed the correct principles in its determination and whether its findings are correct under the proper standards of review.
Respondent stresses that the use of the "best interest" test for this case is improper. He urges that an acknowledging father should have the parental rights and powers enjoyed by the father of a legitimate child. To support this position, respondent selected language from earlier cases which we find, after close analysis, to be inapposite. Although the cited cases speak of the rights of natural parents, a review of the facts in those cases disclose that the children involved were of legitimate status. Cantrell v. Talley, 291 So.2d 462 (La.App. 3rd Cir.1974); In Interest of Street, 463 So.2d 1373 (La.App. 1st Cir. 1984), writ denied, 466 So.2d 1300 (La. 1985). If the language of those cases was meant to encompass all parent-child relationships, legitimate and illegitimate, then the statements were dicta.
Respondent also relies upon the case of Cawthorne v. Williams, 313 So.2d 915 (La. App. 2nd Cir.1975). In that case the mother of an illegitimate child was competing with non-parents for the rights of custody. That case cannot be authority for respondent's position. First, the language is dictum because the mother was unsuccessful in obtaining custody of the child on the facts. Second, a significant difference is *511 recognized between the rights of a mother relating to an illegitimate child and the rights of a male whose acknowledgement is not concurred in by the natural mother. La.C.C. Art. 256. Collins v. Division of Foster Care, Jefferson Parish, Family Division, 377 So.2d 1266 (La.App. 4th Cir. 1979). It has been held by the United States Supreme Court that a state may accord two biological parents different legal rights without violating the equal protection clause. Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983).
This case is also distinguishable from Deville v. LaGrange, 388 So.2d 696 (La. 1980). In that case, the mother of the illegitimate was deceased and the contest was between a natural father and grandparents. In this case, the mother has surrendered the child for adoption and has not concurred in the father's acknowledgement. In fact, she aligns herself in opposition to the respondent.
There is no statutory basis for finding that the "right to oppose" an adoption found in R.S. 9:422.14 should grant to a natural father the rights of the father of a legitimate child. The statute should be read to mean what it says; it does not purport to have the sweeping effect urged by respondent. If the legislature had desired such a change, it would have used a more direct approach. The statute simply allows a natural father to be heard on the issue of adoption if he has fulfilled certain requirements.
An analogy illustrating that the right to oppose an adoption is not equated with the right to veto through the withholding of consent is seen in the related statutes R.S. 9:422.10 and 422.11. These latter provisions deal with the right of a parent, who has executed a formal act of surrender, to oppose an adoption after the surrender has been revoked. It is explicit that, in the event of opposition by a parent who has surrendered and then revoked surrender, the criterion of best interest of the child is to be used by the court on an adoption question. This court has already recognized that in the case of In re G.O., 433 So.2d 1115, 1117 (La.App. 3rd Cir.1983) wherein it was said:
"This right to revoke consent has the limited effect of giving the surrendering parent or parents standing to oppose the adoption."
Thus, respondent's standing gave him the right to be heard in the judicial determination made of the child's best interest; this included the right to seek custody for himself. See Creppel v. Thornton, 230 So.2d 644 (La.App. 4th Cir.1970). Respondent did not have the power, accorded to parents of a legitimate child, to defeat the adoption by the mere withholding of consent. See Adoption of Kitler v. Kitler, 445 So.2d 202 (La.App. 3rd Cir. 1984), writ denied, 447 So.2d 1069 (La. 1984).
The trial court applied the correct standard and found that the adoption was in the best interest of the child. In further finding that the best interest of the child would not be served by making the respondent custodian of the child, the court recited in the reasons for judgment that the respondent was unmarried, had no other children, was immature and suffered from drug and behavioral problems. It was further noted that respondent's relationship with the mother of the child and with respondent's own father had been marked by violent and inappropriate responses. The respondent had never seen the infant and had established no bond with the child. There appears to be no error in the trial court's conclusion that the respondent had shown no capability of caring for a minor child. Also considered was that the mother of the child, an honor student at a state university, had been motivated to place the child for adoption in order to give the child a better opportunity than she or the respondent could provide. The record in this case presents an adequate basis for the trial judge's conclusions. Factual findings and judgments may not be disturbed in the absence of a clear abuse of that discretion. Adoption of Kitler v. Kitler, supra.
*512 Accordingly, for the above and foregoing reasons, the decree of the trial court is affirmed at appellant's costs.
AFFIRMED.
LABORDE, J., concurs and assigns written reasons.
LABORDE, Judge, concurring.
I am unable to agree with the reasoning of the majority opinion. I concur in the result and assign the following reasons.
As found by the majority, Baby Doe was born in Iberia Parish, out of wedlock, on June 20, 1985. The father executed an act of acknowledgment of the child on June 27, 1985, and properly recorded the act in Iberia Parish on July 3, 1985. The mother executed an act of conditional surrender for adoption to Catholic Social Services of the Diocese of Lafayette, Inc., on July 10, 1985. On July 15, 1985, the Diocese filed a petition to authorize the adoption agency to place the child for adoption. The father timely answered the petition and reconvened seeking custody of the child.

I.
The father of an illegitimate child may establish his right to oppose the adoption of his child if he complies with the technical requirements of LSA-R.S. 9:422.14. Compliance with this statute does not insure veto power over the adoption; it grants only the right to challenge or object to the adoption. In discussing the due process rights a natural father enjoys under the United States Constitution, Amendment XIV, our U.S. Supreme Court noted that the parties must comply with the state's statutory requirements:
"The legitimate state interests in facilitating the adoption of young children and having the adoption proceeding completed expeditously that underlie the entire statutory scheme also justify a trial judge's determination to require all interested parties to adhere precisely to the procedural requirements of the statute." [emphasis supplied]
Lehr v. Robertson, 463 U.S. 248, 265, 103 S.Ct. 2985, 2995, 77 L.Ed.2d 614 (1983).
Relying on no less authority than the U.S. Supreme Court, I feel free to demand all interested parties, in this case the father, to "adhere precisely to the procedural requirements" of LSA-R.S. 9:422.14. The majority states that the "execution of the authentic act by the respondent herein and its timely recordation in the Parish of Iberia fulfilled the requirements of the cited statute." (Maj. opinion at 510.) In fact, the father is also required to record "the acknowledgement on the child's birth certificate." LSA-R.S. 9:422.14(B). The record fails to establish that this recordation was accomplished.
Finding that the precise requirements of the statute were not met, I conclude that the father failed to establish his right to oppose the adoption. For this reason, I concur in the result only.

II.
Now, assuming arguendo that the requirements of the statute have been met, I would like to consider the majority's rationale for affirming the trial court's judgment.
When the father in this case discovered that his ex-paramour gave birth to a child, he immediately formally acknowledged the child as his own and attempted to comply with LSA-R.S. 9:422.14. He opposed the adoption and petitioned for custody of the child. The child's mother, the adoption agency, and the court refused to allow the father the opportunity to see, care for, or nurture the child. The father was effectively stonewalled and he was denied his constitutional right, under the due process clause, to establish a familial bond. Each recognized parent has a liberty interest in caring for his child. The "custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944). The extent to which the Constitution affords *513 protection to the relationship between a natural father and his illegitimate child has been discussed in several cases. See Lehr, supra; Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).
As graphically put by Justice Stewart, "Parental rights do not spring full-blown from the biological connection between parents and child. They require relationships more enduring." Caban, 441 U.S. at 397, 99 S.Ct. at 1770. The Court has therefore required that the father demonstrate a full commitment to the responsibilities of parenthood by coming forward and participating in the rearing of his child before substantial protection under the due process clause attaches. Caban, 441 U.S. at 392, 99 S.Ct. at 1768; Lehr, 463 U.S. at 261, 103 S.Ct. at 2993. In my opinion, the father of Baby Doe has timely come forward and attempted to commit himself to the responsibilities of parenthood; he enjoys, therefore, the protection of the due process clause.
Louisiana courts have implicitly interpreted this due process right to bestow to a parent "the paramount right to the custody of the child" and courts are allowed to deprive custody to a parent "only when there are compelling reasons." Wood v. Beard, 290 So.2d 675, 676-677 (La.1974); Deville v. LaGrange, 388 So.2d 696, 697 (La.1980). In the latter case, our Chief Justice plainly admonishes: "There is no reason to restrict the applicability of these principles to parent-child relationships which the law defines as legitimate." This flies in the face of the majority's opinion which seemingly denies application of the well settled "paramount right" rule to fathers of illegitimate children. (See Maj. opinion at 510-511.) Justice Dixon continues:
"No one would argue that the weight of a mother's right to the custody of her child should be reduced simply because she is not married to the child's father and has not performed a formal act of legitimation. There may be a misguided tendency to view the situation in a different light when the parent whose right is at stake is the father, but this so only because of a failure to distinguish between the right which flows from the fact of parenthood, whether that parenthood is legitimate or not, and the possibility of a subsequent forfeiture of parenthood through abandonment or neglect, which may be greater when the relationship between the child's father and its mother, or between the father and the child, has not been formalized. Parenthood itself confers a right to custody, but that right of parenthood may be forfeited by conduct which denies or rejects one's child."
Id. Here, the father has not forfeited his paternal righthe has endeavored to nurture it. He even formalized the relationship through an authentic act. Because the mother has surrendered the child, the father is presumptively entitled to custody of the child.
Louisiana cases are legion in discussing the paramount right a parent has to the custody of his child as against a nonparent. This court has recently concisely articulated the rule in LaPointe v. Menard, 412 So.2d 223, 226 (La.App.3d Cir.1982):
"It is well settled in our jurisprudence that a parent has a paramount right to custody of his or her child and may be deprived of such right only for compelling reasons. In accordance with this principle, it is well recognized that when a parent competes with non-parents of the child, the parent's right to custody must be recognized unless it be established by convincing proof that he or she is unfit or has forfeited the parental right of custody by action or omission. Wood v. Beard, 290 So.2d 675 (La.1974); State in the Interest of Taylor, 296 So.2d 841 (La.App. 2nd Cir.1974), writ refused 299 So.2d 799 (La.1974); Girouard v. Halpin, 368 So.2d 1139 (La. App. 3rd Cir.1979); Tolar v. Cunningham, 368 So.2d 1188 (La.App. 3rd Cir. 1979), writ refused 369 So.2d 710 (La. *514 1979); Paul v. Cloud, 378 So.2d 586 (La. App. 3rd Cir.1979), writ refused 380 So.2d 101 (La.1980); Juneau v. Bordelon, 380 So.2d 208 (La.App. 3rd Cir.1980); LaCroix v. Cook, 383 So.2d 59 (La.App. 2nd Cir.1980), writ denied 384 So.2d 801 (La.1980)."
In the vast majority of the cases, the trial court was reversed for granting custody to a nonparent without the requisite compelling reasons. I find that the trial judge and the majority in the case sub judice similarly overzealously decided what they felt to be in the best interest of the child at the expense of the father's parental right to custody. In my view, the trial judge erred in finding that clear and convincing proof was presented to mandate a finding of the father's unfitness.
What does the record tell us of the father's unfitness? The trial court relied on the fact that the father was unmarried and had no other children. Other cases have rejected marital status as a valid basis. See, e.g. Deville, 388 So.2d at 698; Long v. Harris, 420 So.2d 1299, 1301 (La.App. 3d Cir.1982). The trial court also found the father to be immature as evidenced by behavior and drug problems. The psychiatric evidence shows that the father is painfully aware of these troubles and that he has determined to resolve them. Difficulty with interpersonal relationships hardly amounts to clear and convincing proof of unfitness. Our courts have returned custody to parents guilty of far greater indiscretions. See, e.g. Wood, 290 So.2d at 678 (conviction for assault); State in Matter of Williams, 447 So.2d 1211 (La.App. 5th Cir.), writ denied, 449 So.2d 1357 (La.1984) (father's gross lack of supervision allowed sexual abuse of his two minor girls resulting in cases of gonorrhea); La Pointe v. Menard, 412 So.2d 223 (La.App. 3d Cir. 1982) (moral turpitude).
To reiterate, the most egregious error committed by the majority is its declaration that the "trial court applied the correct standard and found that the adoption was in the best interest of the child." (Maj. opinion at 511). The contest for custody between a parent and nonparent requires the application of more stringent legal principles than solely the best interest test. Convincing proof must establish that the natural parent is unfit or has forfeited his parental right to custody because a parent has a paramount right to the custody of his child. Although, great weight is given to the trial court in determining custody, forfeiture of the preferential right to custody must be well supported. The trial court's finding of paternal unfitness is unsupportable. The majority's affirmance of this finding, without recognizing the father's paramount right to custody, is regretable.
I respectfully concur.
NOTES
[*] Honorable H. Ward Fontenot, Judge Pro Tempore.