SHORTESS, Judge.
This litigation has had an unfortunate history. It began on August 13, 1981, when, pursuant to a joint petition for change of custody brought by Annie Lindsey Street (Mrs. Street)[1] and Clyde W. Street, Sr. (Mr. Street), the natural parents of Amanda May Street (Amanda), who was born on December 12, 1980, the trial court gave to Newman and Winona Wheat (Mrs. Wheat) the care, custody and control of Amanda subject to Mrs. Street’s rights of reasonable visitation. On December 29, 1981, the Wheats filed a petition to have Amanda declared abandoned. Mrs. Street answered and defended the suit. Mr. Street did not and consented to the Wheat’s action. The matter proceeded to trial on February 18,1982. On March 25,1982, the trial court issued an opinion which was reduced to judgment on April 26, 1982. Therein, the trial judge made the following findings:
The natural mother made no real effort to even visit with her child. Even though living with her sister, a person of some means, in McComb, Mississippi no real effort was made to visit with the child.
The child in question has experienced love and stability only since it has been living with the Wheats.
The child has been abandoned within the meaning and intent of the applicable laws of this State.
Mrs. Street appealed and on February 22, 1983, this court reversed, finding that the Wheats had no standing under La.R.S. 9:403 B to initiate an abandonment proceeding and ex proprio motu dismissed the suit because the Wheats had no right or interest to institute the suit. La.C.C.P. art. 927. See Wheat v. Street, 428 So.2d 930 (La. App. 1st Cir.1983).
Shortly thereafter, on March 31, 1983, Mrs. Street filed a rule against the Wheats seeking a change of custody. On March 16, 1983, a petition to declare Amanda abandoned was filed by the State of Louisiana through the District Attorney for the Twenty-First Judicial District Court. Another rule for change of custody was filed by Mrs. Street on May 24, 1983. The two issues were consolidated and trial was held on July 20, 1983. On December 1, 1983, the trial court issued an opinion which provided the following reasons:
This child has known love, gentle care and stability since it has been with the Wheats; prior to that time it had none of the essential needs fulfilled.
The court considers stability as the most essential need of a child, with love running a close second. The court feels that only with the Wheats can this child know stability and love.
*1375 The court is further convinced by this review that its original decision in this matter was correct.
On February 23, 1984, a judgment was signed which provided as follows:
IT IS ORDERED ADJUDGED AND DECREED, that the minor child Amanda May Street be and hereby is declared an abandoned child by her parents Clyde Street and Annie Lindsey Street Mote and that the care, custody and control of the minor child, Amanda Mae (sic) Street is granted unto Mr. Newman Wheat and his wife Winona Blount Wheat.
Mrs. Street has brought this appeal seeking to reverse the judgment of the trial court and to gain custody of Amanda. FACTS
The parties stipulated that the transcript from the initial trial would be introduced and made part of this case, so we have reviewed both transcripts in delineating the following facts.
Clyde W. Street, Sr., and Annie Lindsay Street were married to each other, and two children were born of that marriage, Clyde W. Street, Jr., and Amanda Mae Street. Amanda was born on December 12, 1980, but after the Streets were separated. During the separation, Mrs. Street had custody of Clyde, Jr.,[2] and was pregnant with Amanda.' The Wheats were foster parents to Clyde, Jr. The Wheats and the Streets became acquainted through this means.
Amanda was eight months old on August 10, when the Wheats first obtained her physical custody. Earlier in July, Mrs. Street brought Clyde, Jr., and Amanda to the Wheats for a visit. She told Mrs. Wheat that she had no money for food or diapers for Amanda and she had to do something about it because she could not take care of the child at that time. They discussed the matter and, according to Mrs. Wheat’s testimony, she told Mrs. Street that they (the Wheats) would not be interested in custody unless she consented to their adopting the child. Mrs. Street and Mrs. Wheat went to a lawyer’s office who told them that the father’s consent would be necessary if anything was to be done. Mrs. Street was to think about it over the weekend. On Monday, they returned to the lawyer’s office, where the Streets signed papers[3] which formed the basis for the change of custody. On August 13, 1981, the trial court, pursuant to the pleadings, signed a judgment which provided as follows:
IT IS ORDERED, ADJUDGED AND DECREED that the care, custody and control of the minor child, Amanda May Street, be transferred to Newman Wheat and Winona Wheat, until further order of this court, subject to Annie Lindsey Street receiving reasonable visitation rights with said minor child.
On November 29, after a written request wherein Mrs. Street asked to see Amanda, the parties met at McDonald’s on Plank Road in Baton Rouge. Mrs. Wheat testified that they discussed the adoption at that time and that Mrs. Street was still agreeable.
In December, Mrs. Wheat testified she got a letter from Mrs. Street postmarked from McComb, Mississippi, which stated that they (the Wheats) could keep Amanda only until she got herself “straightened out.”
Mrs. Street’s testimony was to the effect that the only consent she gave was for temporary custody, until she got “straightened out” and that she never told the Wheats they could adopt Amanda; that she offered to help but they refused; that she tried to set up meetings to see Amanda, but they said they would not agree while *1376 the abandonment proceedings were pending.
Vicky Street, who is Clyde Street, Sr.’s, second wife, testified that once, when Mrs. Street came to see Clyde, Jr., Mrs. Street told her that she did not want the Wheats to adopt Amanda but just keep her until she could make a home for her. Mr. Street testified that he agreed to the abandonment because he felt that the Wheats took very good care of Amanda and that Amanda would be better off with them than with Mrs. Street.
Janet Lambert, Mrs. Street’s sister with whom she lived in McComb at the time of the initial trial, testified that Mrs. Street had seen her children on two occasions since the change of custody and had been refused several other times, which she estimated to be four or five times.
Both Newman and Winona Wheat testified that they took custody of Amanda with the understanding that after the time delays passed, Mrs. Street would consent to adoption. They indicated that they were not interested in taking custody of Amanda if that custody was subject to any change that they could not control. Mrs. Wheat did admit that Mrs. Street changed her mind about the adoption after she moved to McComb.
Since the date of the initial trial, Mrs. Street testified that she had only seen Amanda on a few occasions; that she saw her on June 12, 1982; that she and her husband, David Mote, attempted to see Amanda on December 21, 1982, to bring Clyde, Jr., and Amanda their Christmas presents; and that because of a dispute at Mr. Street’s house when she was told her husband was not welcome, she left and returned to Mississippi without seeing Amanda. This was done notwithstanding the fact that the Wheats, who had been notified of her presence at the Streets, were en route with Amanda. Mrs. Street also testified that she attempted to make arrangements to see Amanda on other occasions but was thwarted because she was unable to get the Wheat’s telephone number. Mrs. Street frankly admitted that she had not contributed to Amanda’s financial support since the Wheats obtained custody on August 10, 1981.
Mr. Street testified at the second hearing also. Therein, he said that he had no objection to the Wheats; that he had become good friends with them; that he saw Amanda once or twice a week; and that he and his wife have supper with the Wheats on occasion. Mr. Street testified that he had seen Mrs. Street three times since February of 1982, all at his home; that Mrs. Street never calls to ask about her children; and that she is not fit to care for Amanda in his opinion.
Winona Wheat testified that Annie had seen Amanda only once since February of 1982; that she encouraged rather than impeded attempts by Annie to see her child; that she had not kept her telephone number a secret; that she never heard from Mrs. Street; that when she did hear from her, she was always happy to take Amanda over to the Streets so that Amanda could see her mother.
Upon completion of the testimony, the trial court laid the matter over in order to obtain home study evaluations on both homes. The home evaluation on Mrs. Street was done by the Pike County, Mississippi, Welfare Department. This report is positive in all respects, indicating that both Mrs. Street and her present husband are gainfully employed; that they possess the means to provide support for Amanda; that they live in a well-furnished, neat and clean two-bedroom trailer home in a rural area of Pike County.
The home evaluation of the Wheat’s home was done by the Livingston Parish, Louisiana, Welfare Department. We are especially impressed with the report, as it is most positive and complete and shows that the Wheats are financially and emotionally capable of raising this child and have provided a home for other foster children and have raised two adoptive children. We do note that Newman Wheat’s date of birth is December 17, 1921, and Winona Wheat’s date of birth is May 10, 1935.
The trial judge was of the opinion that the stability of Amanda’s environment was *1377 her most essential need and that only with the Wheats could Amanda have the stability and love that was necessary. He signed a judgment declaring Amanda an abandoned child.
THE LAW
A. ABANDONMENT
The pertinent law is found in La.R.S. 9:403 A(l):
A. child shall be considered abandoned when clear and convincing evidence is introduced at a judicial proceeding to prove either:
(l)(a) the child has been deserted for a period of at least four months by his parent or parents, the whereabouts of his parent or parents are unknown, the parent or parents have made no provision for the child’s care and support and have shown an intention to avoid parental responsibility; or
(b) the parent or parents have failed to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid parental responsibility.
The trial court’s opinion does not address abandonment, but concentrates entirely on the necessity for a positive stability of environment. In its first opinion, the trial court noted that the natural mother made no real effort to even visit with Amanda. The evidence showed, however, that from August 10, 1981, through the date of the first hearing on February 18, 1982, Mrs. Street had seen Amanda on two occasions. There was considerable dispute as to how many additional times she tried to see Amanda but was unable to do so. But Mrs. Wheat admitted that after Mrs. Street moved to McComb, she received a letter from her in December wherein Mrs. Street stated that she wanted the Wheats only to have custody of Amanda until she got her life straightened out. The evidence is also clear that the reason the Wheats were able to receive Amanda into their home initially was because Mrs. Street went to them and told them that she was unable to care for Amanda’s food and diaper needs and that she had to do something about it. The record is clear, also, that this litigation was instituted on December 21, 1981, only four months and nine days[4] from the date the initial custody judgment was signed. This case has been in litigation for three years. Immediately after our original judgment became final, Mrs. Street, on March 31, 1983, filed a rule to obtain custody of Amanda. Shortly thereafter, the State filed its petition to have Amanda declared abandoned. Since the date of the original hearing, Mrs. Street has seen Amanda on one occasion only, June 12, 1982. It is hotly disputed as to whether she made any other serious attempts to do so. Amanda was declared abandoned pursuant to a written judgment on April 26, 1982. That decision was reversed on appeal, and immediately thereafter Mrs. Street filed a rule to obtain custody but was unsuccessful again.
Do these facts demonstrate clear and convincing evidence as required by La. R.S. 9:403 that Mrs. Street failed to provide for the care and support of her child for a period of at least four months under circumstances showing an intention to permanently avoid parental responsibility? We must answer that query in the negative. The Wheats knew before they filed their abandonment petition, according to their version of the facts, that Mrs. Street no longer consented to an adoption and only wanted them to have custody until she got her life straightened out.
The State failed to show with clear and convincing evidence required by La.R.S. 9:403 that Mrs. Street abandoned Amanda.
CUSTODY
We have determined that Mrs. Street did not abandon Amanda. We accordingly must address the issue of custody which was tried along with the abandonment proceeding after consolidation of the two actions.
The law is clear. It was succinctly restated in Jones v. Jones, 415 So.2d 300 (La.App. 2nd Cir.1982):
*1378 The law is well settled that a parent enjoys a paramount or superior right to custody of his child as against a nonpar-ent. Deville v. LaGrange, 388 So.2d 696 (La.1980); Wood v. Beard, 290 So.2d 675 (La.1974); Burt v. McKee, 384 So.2d 489 (La.App. 2d Cir.1980); Hall v. Hall, 367 So.2d 162 (La.App. 2d Cir.1979). A parent may be deprived of that custody only when there are compelling reasons, such as the parent has forfeited his right to parenthood, he is unfit, or he is unable to provide a home for the child. The burden of proving “compelling reasons” rests with the non-parent. Snell v. Snell, 347 So.2d 511 (La.App. 2d Cir. 1977). It is not proper to merely compare the parent’s circumstances and situation with that of the non-parent and award custody on the basis of best interests of the child. The “best interest” comparison is the proper basis for custody contests between parents; it is not properly applied to a contest between a parent and a non-parent because the parent enjoys the paramount right to custody. Burt v. McKee, supra; Powell v. Barsavage, 399 So.2d 1308 (La.App. 4th Cir.1981); LaCroix v. Cook, 383 So.2d 59 (La.App. 2d Cir.1980).
415 So.2d at 302.
The trial court, while it signed a judgment declaring Amanda abandoned, made no finding of fact in its opinion to justify that conclusion. As aforesaid, our review of the record clearly shows no support for that conclusion. Additionally, the trial court did not find that Mrs. Street was unfit to care for Amanda or unable to provide a home for her. The Wheats have provided a loving, stable environment during this protracted litigation,[5] but this fact alone cannot be considered by us in view of the established jurisprudence of this State.
Accordingly, the decision of the trial court is reversed, and judgment is rendered granting the permanent care, custody and control of Amanda May Street to her mother, Annie Street Mote. The State of Louisiana is taxed for all costs as permitted by law.
REVERSED AND RENDERED.

. Mrs. Street has remarried and is now Mrs. Annie Mote.

. Somehow, the record does not indicate how the Livingston Parish Welfare Department became involved with Clyde, Jr.’s welfare and had placed him in a foster home. Later, Mr. Street obtained legal custody of Clyde, Jr., pursuant to court order. Clyde, Jr.’s, status is not an issue in this appeal.

. Each signed a separate verification and consent which provided that they "read the above Joint Petition for Change of Custody and that all of the allegations of fact contained therein are true and correct, and she hereby consents to the transfer of the care, custody and control of [Amanda] to petitioners, Newman and Winona Wheat.”

. La.R.S. 9:403 A requires a four-month lead

. The state of the law permitting indefinite transfer of the custody of infants upon court-approved agreements between the mother and third parties is abhorrent, where the child’s best interests are not specifically protected. In this instance, Amanda’s emotional well-being may suffer by uprooting her from the only stable environment she has known since she was eight months old, and placing her with a relative stranger (albeit her biological mother). Voluntary custody arrangements are dangerous unless:
(1) the child’s best interests are effectively represented through some person wholly independent of both the parent(s) and third party seeking custody, and
(2) the circumstances are such that it is absolutely clear that the mother is temporarily unable to care for the child, the new custodians are aware the arrangement is only temporary, and the primary motivation of all parties is enhancement of the child’s quality of life.
Absent these circumstances, the law provides for both adoption proceedings (through which a child can be assured a loving and stable environment, rather than "tug-of-war’’ litigation) and the Foster Parent program, which brings in the State on behalf of and as custodian of the child.